UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED FILED
CLERKS OFFICE OFFICE

2005 FEB 18 P 2: 54

U.S. DISTRICT COURT
DISTRICT OF MASS

| | |
|---|---|
| In re GITTO GLOBAL CORPORATION, Debtor. ) ) ) ) | |
| GARY GITTO, ) ) ) | **05** CV **1 0 3 3 4 DPW** |
| Appellant, ) ) | |
| v. ) ) | |
| WORCESTER TELEGRAM & GAZETTE ) CORP., MEDIANEWS GROUP, INC., ) CHARLES L. GLERUM, EXAMINER, ) and PHOEBE MORSE, UNITED STATES ) TRUSTEE, ) ) | |
| Respondents. ) | |

## APPELLANT'S EMERGENCY MOTION FOR STAY OF THE BANKRUPTCY COURT'S ORDER OF FEBRUARY 9, 2005 RELEASING THE REPORT OF THE EXAMINER

Pursuant to Federal Rules of Bankruptcy Procedure 8005, Appellant Gary Gitto hereby moves this Court for an immediate stay of Judge Joel B. Rosenthal's Further Order Regarding Report of Chapter 11 Examiner dated February 9, 2005, pending the appeal Mr. Gitto has filed with the district court.

As grounds therefore, the appellant states the following:

1.     On January 7, 2005, an Examiner, Charles L. Glerum, appointed pursuant to 11 U.S.C. §1104, filed his Preliminary Report under seal with the Bankruptcy Court. The Examiner was ordered to provide each person named or referenced in the Report with a copy of only those portions of the Report that relate to those individuals.

2.     The Examiner's Report contained highly prejudicial allegations and conclusions against the appellant.

3.     On December 23, 2004, the Worcester Telegram & Gazette Corporation moved to intervene and filed a motion for public access to the Examiner's Report. On January 5, 2005, the MediaNews Group, Inc. (publisher of the Sentinel & Enterprise Newspaper) also filed a motion to intervene and obtain public access to the Examiner's Report.

4.     On January 25, 2005, the appellant (along with numerous other interested parties) moved to impound the Report from public access, but did not oppose the disclosure of the Report to certain interested parties, under seal, including the Creditor's Committee, LaSalle Business Credit, LLC, and the United States Trustee.

5.     On February 9, 2005, the Bankruptcy Court ruled that the Examiner's Report be made public by February 23, 2005. The Bankruptcy Court's Memorandum and Order are attached hereto as Exhibit A.

6.     On February 15, 2005, the appellant filed a Notice of Appeal, along with a Statement of Election requesting that the appeal be heard by the United States District Court. (Exhibit B).

7.     On February 15, 2005, Mr. Gitto also filed a Motion for Stay of Order with the Bankruptcy Court; that motion was denied by the court that evening. (Exhibit C).

8.     The release of the Examiner's Report to the public poses a genuine risk of substantial harm to the appellant and will irreparably impair Mr. Gitto's ability to obtain a fair trial in any ensuing criminal proceeding.

9.    Once the Examiner's Report is released to the public, the appellant's appeal will, for all intents and purposes, become moot.

10.    This appeal is related to the case of LaSalle Business Credit v. Gary Gitto, et al., No. 04-12227- DPW.

WHEREFORE, appellant respectfully prays that the Court:

1.    Schedule a hearing on this motion.

2.    Issue a stay pending the hearing.

3.    Permit appellant to file a memorandum and supporting documents on Tuesday, February 22, 2005.

4.    After hearing, issue a further stay pending resolution of the appeal on the merits.


Respectfully submitted,

Max D. Stern
BBO No. 479560
Lillian Hirales
BBO No. 652698
Stern, Shapiro, Weissberg
 & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114


Dated: February 18, 2005

G:\SSWG\Gitto\Gitto-Global Bankruptcy\Motion for stay dist ct.wpd

*United States Bankruptcy Court*
*District of Massachusetts*

IN RE

GITTO/GLOBAL CORP.,
DEBTOR

CHAPTER 11
CASE 04-45386

## FURTHER ORDER REGARDING REPORT OF CHAPTER 11 EXAMINER

For the reasons set forth in the Memorandum of Decision With Respect to Further Order Regarding the Report of Chapter 11 Examiner, dated February 9, 2005, it is hereby ORDERED:

1. The Examiner shall correct the Report (the "Corrected Report") to reflect those changes he believes should be made for the sake of completeness and accuracy as represented during the hearing. The Examiner shall redact bank account numbers from the Corrected Report and its exhibits.

2. The Examiner shall electronically file a copy of the Corrected Report, as redacted pursuant to paragraph 1, on February 23, 2005.

3. The Motion of the Official Committee of Unsecured Creditors for Order Directing Examiner to Provide Committee with Complete Unredacted Copy of the Examiner's Report [Docket # 473] and the Debtor's Motion for Limited Release of Unredacted Examiner's Report [Docket # 478] are ALLOWED. The Examiner is directed to furnish a copy of the Corrected Report containing bank account numbers to the Committee and the Debtor.

4. The Motion of the United States Trustee to Authorize Chapter 11 Examiner to Submit to the United States Trustee an Unredacted Copy of the Examiner's Report

[Docket # 459]; the Omnibus Limited Objection of LaSalle Business Credit LLC to Motions to Seal the Examiner's Report and Motion for an Order Directing the Examiner to Provide a Complete Unredacted Copy of the Examiner's Report to LaSalle Business Credit LLC [Docket # 474]; and the Omnibus Limited Objection of ORIX Financial Services, Inc. to Motions to Seal the Examiner's Report and Motion for an Order Directing the Examiner to Provide a Complete Unredacted Copy of the Examiner's Report to ORIX Financial Services, Inc. [Docket # 485] are SUSTAINED and the relief ALLOWED to the extent that these parties may receive the Corrected Report as redacted per paragraph 1. The Examiner's obligation to furnish copies of the Corrected Report to these parties shall be satisfied by the electronic filing of the Report as redacted.

5. The Objection of MediaNews Group, Inc. To Motions to Seal or Redact All or Part of the Examiner's Report [Docket # 482] and the Opposition of Intervenor/Plaintiff Worcester Telegram & Gazette Corporation to Motions to Seal the Report, or Portions Thereof, of the Chapter 11 Examiner [Docket # 484] are SUSTAINED as set forth in the Memorandum of Decision. The Examiner's obligation to furnish copies of the Corrected Report to these parties shall be satisfied by the electronic filing of the Corrected Report as redacted. **Nothing herein is intended to be nor shall be construed as a finding that any of the individuals named in the report are public figures, limited public figures, or quasi-public figures.**

6. The following motions seeking the sealing of all or part of the Report are DENIED: Docket Nos. 435; 436; 437; 438; 439; 443; 444;445; 448; 449; 453; 454;

2

456;457; 464; 465; 466; 467; 468; 477;479; 480; 481; 500; 502; 510; 511; and 513.

Dated: February 9, 2005

Joel B. Rosenthal
United States Bankruptcy Court

*United States Bankruptcy Court*
*District of Massachusetts*

IN RE

GITTO/GLOBAL CORP.,
DEBTOR

CHAPTER 11
CASE 04-45386

## MEMORANDUM OF DECISION WITH RESPECT TO FURTHER ORDER REGARDING REPORT OF CHAPTER 11 EXAMINER

Following this Court's Order of December 9, 2004 [Docket # 344] granting the Amended Motion to Seal Examiner's Preliminary Report [Docket # 332], the issue of sealing all or redacting portions of the Examiner's Report again came before the Court on various pleadings filed by several parties in interest seeking access to the Examiner's Report and by some parties urging that publication of the Report be limited. The Examiner opposed providing access to his "preliminary" Report; other parties opposed the request by members of the press for access to the Report. After the hearing on these sundry pleadings, the Court issued its Order Regarding the Report of the Examiner [Docket # 416] ("Order of January 5, 2005") whereby the Examiner's Report would be filed under seal with the Court. In addition the Examiner was ordered "to provide each person named in the report, or referenced in such a fashion that the Examiner reasonably believes such person could be identified, with a copy of **only** that portion or portions of the report that relate to the individual." Order of January 5, 2005 at ¶ 2. The same order also established a procedure whereby those parties seeking to seal all or redact portions of the Report would file motions requesting such relief in compliance with applicable law.

In accordance with the Order of January 5, 2005, the Examiner filed his Report under seal with the Court on January 7, 2005 [Docket #506] and timely served copies of the relevant part or parts of the Report relating to individuals or entities upon those respective recipients. In all the Examiner served approximately 120 individuals or entities. In response the Court received numerous pleadings that fall into two categories: motions to seal or redact portions of the Report and motions for access to the Report. The former number approximately 26 but some seek to shield the same individuals and entities named in the Report.[1] The latter include motions, some of which were combined with oppositions to the motions to seal, by the Official Committee of Unsecured Creditors ("Creditors' Committee"),[2] the United States Trustee, the

---

[1] Many of the motions to impound failed to comply with the Massachusetts Local Bankruptcy Rules. Some motions sought to protect the name of the individual named in the Report but identified the individual in the very motion or caption of the motion to seal which was then filed not under seal and, in some cases, filed electronically by counsel. The Court did endeavor to protect movants from their own actions and treated motions to seal that contained information the movants hoped would be kept from the public as if those motions had been properly filed under seal. Suffice it to say that the motions seeking to seal or redact the Report, taken as a group, show an overwhelming lack of understanding of the procedure for seeking impoundment to say nothing of the substantive burden which parties requesting such a remedy must bear. Parties, especially counsel, are cautioned to familiarize themselves with the procedure for requesting impoundment. In the future the Court may not be inclined to protect movants who ignore the local rules. Moreover as a result of the orders which the Court will issue in connection with this Memorandum of Decision, improperly filed motions will be imaged. In the end the Court cannot and will not ignore its obligations to make available all documents not filed under seal.

[2] The Creditors' Committee is entitled to access to the Report or a summary of the Report as a matter of law. Section 1106(a)(4) of the United States Bankruptcy Code, 11 U.S.C. § 1106(a)(4), made applicable to examiners by section 1106(b), provides that an examiner "shall ... (A) file a statement of any investigation conducted [by the examiner] ...; and (B) transmit a copy or a summary of any such statement to any creditors' committee ...."

Debtor, LaSalle Business Credit LLC, and ORIX Financial Services, Inc., each requesting that it or she be given a complete copy of the Report even if the Report is not to be published generally. The press, in their opposition to the motions to seal, seek unfettered access to the Report on behalf of the public.[3]

The Court has reviewed all of the motions to seal, oppositions thereto, motions for access to the Report, all pleadings related to the foregoing, and the Report along with all of its exhibits. The Court also held a hearing on these matters and the parties were given an opportunity to raise new arguments[4] in support of their cause or in opposition to an opposing position.

## DISCUSSION

Whether some or all of the Report should be sealed and whether parties (with

---

[3] Worcester Telegram & Gazette Corporation ("T&G") and MediaNews Group, Inc. filed motions to intervene to which some objections were filed. "[C]ourts must determine on a case by case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation. *See In re Penn-Dixie Industries, Inc.*, 9 B.R. 941, 943 at n. 7 (Bankr. S.D.N.Y.1981)." *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985). The newspapers easily meet this test. "The press has standing to intervene in actions to which it is otherwise not a party in order to petition for access to court proceedings and records. *Petition of Tribune Co.*, 784 F.2d 1518, 1521 (11th Cir.1986) (citing *Newman v. Graddick*, 696 F.2d 796, 800 (11th Cir.1983))." *In re Apex Oil Co.*, 101 B.R. 92, 95-96 (Bankr. E.D.Mo. 1989). *See also In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 431(S.D.N.Y. 1993). Moreover intervention is "the procedurally correct course" for third-party challenges to protective orders. *In re Beef Industry Antitrust Litigation*, 589 F.2d 786, 789 (5th Cir.1979), *cited with approval Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783-84 (1st Cir. 1988), *cert. denied* 488 U.S. 1030, 109 S.Ct. 838 (1989). Therefore separate orders granting the motions to intervene and overruling the objections will enter.

[4] Because the Court reviewed each of the relevant pleadings and because many of the arguments advanced in favor of sealing all or part of the Report are substantially similar, the Court asked parties or counsel to limit their oral presentations to arguments not raised in their written submission.

the exception of the Creditors' Committee which has a statutory entitlement to at least a summary of the Report) should be given access, or limited access, to the Examiner's Report are intertwined.  They are two sides of the same coin.

## The Nature of the Examiner's Report

Many of the parties, relying on *Matter of Baldwin United Corp.*, 46 B.R. 314 (Bankr. S.D. Ohio 1985), urge the sealing of the Report on the grounds that an examiner enjoys a unique status in a bankruptcy; his role is akin to a civil grand jury. These movants correctly note the *Baldwin* court agreed with the examiner's characterization of his investigative responsibilities "to ascertain legitimate areas of recovery and appropriate targets for recovery" as akin to the function of a civil grand jury and concluded that if an examiner's disinterested and nonadversarial role is to be preserved, all examiners "and the subjects of their investigation must be unhampered by the threat that any information which comes into the Examiner's hands will be fair game for a plethora of anxious litigants, regardless of the limitations on disclosure which the Bankruptcy Court has imposed." *Id.* at 317.  *Baldwin*, however, unlike the instant controversy, involved efforts by plaintiffs in a security class action pending against the debtor to require the examiner "to preserve all documents and other investigative materials" which the examiner acquired during his investigation.  The court viewed this request as the plaintiff's attempt to circumvent the usual course of discovery.  Moreover the order delineating the *Baldwin* examiner's responsibilities contained the following language:

> ORDERED, that except as otherwise ordered by the Court after notice and a hearing, nothing contained herein shall

4

> require the Examiner to disclose to any person the
> Examiner's statement of investigation, or any part thereof,
> *prior to filing such statement* pursuant to Section 1106(a)(4)
> of the Bankruptcy Code. Except as otherwise ordered by the
> Court after notice and a hearing, the Examiner shall not be
> required to disclose to any person, other than the Debtors,
> the Securities and Exchange Commission and any official
> committee of creditors or equity security holders appointed
> in these cases, *the information reviewed in connection with
> his investigation....*

*Id.* at 315 (emphasis added). To cite *Baldwin* for the proposition that an examiner's report must be sealed in all cases, or even to suggest that the examiner's *statement* in Balwin was sealed mischaracterizes the *Baldwin* court's decision.

The distinction between an examiner's statement and the investigative materials underlying that statement is an important one. The statement is *filed* with the Court; underlying documents supporting the statement are not required to be filed. 11 U.S.C. § 1106(a)(4)(A).[5] Papers filed become part of the universe of paper that is presumptively available for inspection by the public. 11 U.S.C. § 107; *In re Apex Oil Co.*, 101 B.R. 92, 98 (Bankr. E.D.Mo. 1989) ("The plain language of § 107 establishes standards only for those documents *which are filed with the court*.") (emphasis in the original). Because there is nothing in the language of sections 107 or 1106(a)(4) that suggests that section 107 is inapplicable to an examiner's report, once an examiner's report is "filed" with the Court, it becomes "a paper filed with the court" and thus falls within the scope of Bankruptcy Code section 107 and Fed. R. Bankr. P. 9018.

---

[5] In the instant case many of the underlying documents have been filed as exhibits to the Report and therefore those documents must be treated differently from materials in the Examiner's possession that he chose not to include.

5

## Section 107, Rule 9018, and the Sealing of Papers

Section 107: Public access to papers, provides as follows:

> (a) Except as provided in subsection (b) of this section, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.
>
> (b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may--
>
>> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
>> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

Section 107 of the Bankruptcy Code *requires* the sealing of "papers" if (1) requested by a party in interest *and* (2) the information falls within the categories set forth in section 107(b)(1) and (2). Section 107(b)(1) is not relevant to the Court's present inquiry. Rather it is the allegations that material contained in the Report is scandalous or defamatory that drive the motions to seal.[6]

Rule 9018[7] of the Federal Rules of Bankruptcy Procedure does not expand the

---

[6]The Court includes in this category even those motions which do not cite section 107(b)(2) or its language as the basis for impoundment but simply ask that the Report be sealed for reasons that do not rise to the level of injury contemplated by section 107(b)(2) or indeed cite no reasons at all. These flaws are dealt with in when discussing the burden imposed by section 107.

[7]Rule 9018 provides:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial

6

Court's ability to limit access to papers filed. It does not provide the movants a separate basis for relief. Similarly MLBR 9018-1(a), which gives the Court discretion to seal documents "[f]or cause reflecting a genuine risk of substantial harm," does not create a new and lower standard for parties seeking impoundment.[8] MLRB 9018-1(a) reiterates that the Court has the power to seal part or all of a pleading if permitted to do so by the Bankruptcy Code or the common law.

Because all papers filed with the Court are presumptively available for inspection by the public, the party seeking to seal or redact papers filed bears the burden of proof. It is not an easy burden nor should it be. The burden has been described in a variety of ways. The party seeking impoundment must submit "evidence that filing under seal outweighs the presumption of public access to court records." *In re Muma Services Inc.*, 279 B.R. 478, 485 (Bankr. D.Del. 2002) ("In the absence of any such evidence, we cannot conclude that disclosure of the terms of the lease would cause harm."). It is a determination based upon the totality of the circumstances. *Phar-Mor, Inc. v.*

---

information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) to protect governmental matters that are made confidential by statute or regulation. If an order is entered under this rule without notice, any entity affected thereby may move to vacate or modify the order, and after a hearing on notice the court shall determine the motion.

[8]Bankruptcy Rule 9029 permits district courts to adopt local rules governing bankruptcy procedure provided that such rules are not inconsistent with the Bankruptcy Rules. Local Rules that are in conflict with either the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure can have no effect. *In re Falk*, 96 B.R. 901 (Bankr.D. Minn.1989). A local rule may not "abridge, enlarge, or modify any substantive right" nor adopt a procedure inconsistent with that contemplated by the Federal Rules of Bankruptcy Procedure. *Id.* at 904.

*Defendants Named Under Seal (In re Phar-Mor, Inc.)*, 191 B.R. 675, 678 (Bankr. N.D. Ohio 1995) ("If the § 107(b) exceptions are applicable, the inquiry must shift to whether Defendants have shown *cause* to invoke an exception, given the totality of the circumstances here found.")  Good cause is not an element of section 107.  *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir.1994)

That information might "conceivably" or "possibly" fall within a protected category is not sufficient to seal documents.  Material must, at the very least, be "likely" to fall within the protected categories.  *United States v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 150 B.R. 334, 340 (D.Del.1993).  Although it is not a case decided under section 107, the First Circuit's pronouncements in *FTC v. Standard Financial Management Corp.*, 830 F.2d 404, 412 (1st Cir. 1987), support the conclusion that a party requesting the impoundment or redaction of information must make a sufficiently particularized showing for the Court to determine that the allegedly offending information falls within the ambit of section 107.  ("We decline to accept conclusory assertions as a surrogate for hard facts.  In the absence of some compendium of chapter and verse--a demonstration that cognizable harm is lurking in the background--the appellants' orotund protests avail them naught.  We continue to believe that '[a] finding of good cause' to impound documents must be based on a particular factual demonstration of potential harm, not on conclusory statements.'").

For purposes of section 107(b) and Rule 9018, scandalous or defamatory material has been defined as material that would cause "a reasonable person to alter their [sic] opinion of [a party] based on the statements therein, taking those statements

8

in the context in which they appear." *In re Phar-Mor, Inc.*,191 B.R. at 679 (citation omitted). If the information is true, it cannot be scandalous or defamatory. *In re Continental Airlines, Inc.*,150 B.R. at 339. "The dissemination of truthful matter cannot be enjoined merely because the matter is prejudicial; section 107(b)(2) requires that the matter be scandalous or defamatory." *In re Whitener*, 57 B.R. 707, 709 (Bankr. E.D.Va. 1986). Moreover information that is prejudicial or embarrassing is not necessarily scandalous or defamatory. *Id. See also Clark v. Pearson (In re Hope)*, 38 B.R. 423, 424- 25 (Bankr. M.D. Ga. 1984); *In re Analytical Systems, Inc.*, 83 B.R. 833, 836 (Bankr. N.D. Ga. 1987).

Protection granted pursuant to section 107(b)(2) and Rule 9018 is not coextensive with that which the Court may grant under Rule 26(c) of Fed. R. Civ. P. Rule 26(c) gives courts discretion to issue protective order to protect person "from annoyance, embarrassment, oppression, or undue burden or expense...." But discovery documents, or perhaps more accurately documents proposed to be discovered, are not papers filed with a court. Thus the cases in which courts have granted relief under Fed. R. Civ. P. 26(c) are inapplicable.

## Common Law Right to Access to Judicial Documents

"It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1312 (1978). The presumption that the public has a right to access records exists in civil proceedings. *FTC v. Standard Financial Management Corp.*, 830 F.2d at 408 n. 4. The presumption

9

includes "materials on which the court relies in determining the litigants' substantive rights" but does not include discovery materials. *FTC. v. Standard Financial Management Corp.*, 830 F.2d at 408 (holding that personal financial statements upon which the court relied in approving a settlement should be accessible to the public).[9]

"It is uncontested, however, that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon v. Warner Communications, Inc.*, 435 U.S. at 598. Denial of common law right to access documents is left to the sound discretion of the court. *Nixon v. Warner Communications, Inc.*, 435 U.S. at 598.

The First Circuit has described the test for determining whether documents to which the common law right to access attaches as follows:

> We agree with the Sixth Circuit that only the most compelling reasons can justify the non-disclosure of judicial records. When faced with a claim that cause sufficiently cogent to block access has arisen, it falls to the courts to weigh the presumptively paramount right of the public to know against the competing private interests at stake.... This balance must be struck, of course, in light of the relevant facts and circumstances of a particular case.... The objectors -those seeking to keep the datum hidden from view—must carry the devoir of persuasion.

*FTC v. Standard Financial Management Corp.*, 830 F.2d at 410 (internal quotations and citations omitted). As the Massachusetts Local Bankruptcy Rules describe the test, a

---

[9]As with section 107 the distinction between papers filed with the Court, *i.e.*, judicial records, and documents that are not filed is important. Private "documents collected during discovery are not judicial records." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir.1986).

party seeking impoundment must demonstrate "a genuine risk of substantial harm."
MLBR 9018-1(a).

It is important to remember that the cornerstone of the common law upon which
many of the parties seeking impoundment rely is that all judicial documents are open to
the public. Although the test for impoundment is expressed in words that do not parallel
the language of section 107 of the Bankruptcy Code, the sound discretion of a
bankruptcy court to seal documents under the common law should mirror its discretion
to seal documents under section 107(b). "Because Congress enacted an express
statutory scheme, issues concerning public disclosure of documents in bankruptcy
cases should be resolved under § 107. *In re Continental Airlines*, 150 B.R. 334
(D.Del.1993)." *In re Phar-Mor, Inc.*, 191 B.R. at 679.

In the final analysis whatever rubric is employed, each party seeking to limit the
public's right to access has a heavy burden. He must come forward with the particular
facts that demonstrate the material at issue is scandalous or defamatory.

The Court is well aware of the facts of this case and has read the Report and all
exhibits thereto. It has reviewed the material in light of the controlling law, the positions
of the various parties, and indeed, scrutinized the materials to determine whether part
or all of the Report and its exhibits should be sealed and now turns to the motions to
seal.

## Have the parties seeking impoundment or redaction met their burden of proof?

At the outset, some comments about the level of proof proffered to the Court are
warranted. In almost all instances there was no proof. Some motions do not even
allege that the information that they state "should" be sealed was defamatory or

11

scandalous. Their proponents instead urged redaction of any information relating to them because they did not want to be mentioned in the Report. Others alleged that their mere inclusion within the Report was sufficient to cause them harm; for example some employees or former employees did not want the fact of their employment by the Debtor published. Still others urged that the Court not divulge to the public information about them even though they do not allege that information contained in the Report that is relevant to them is factually inaccurate. Still others seek to shield themselves from public knowledge that they did not or would not speak with the examiner, including those individuals who properly invoked their privilege against self-incrimination. While the Court is mindful that the disclosure that an individual who is a potential criminal defendant may taint the pool of prospective jurors, many of the individuals advancing such argument are already defendants in a civil action pending in the United States District Court for the District of Massachusetts (Civil Action # 04-12227-DPW) where the allegations are substantially similar to information which the Examiner was told and included within the Report.

In the final analysis, each of the motions to seal fall short- often far short, of the mark. Discomfort, embarrassment, shame, and remorse do not rise to the level of scandalous or defamatory. The Examiner took great pains to be inclusive yet even-handed.

## The Court's Discretion to Seal or Redact the Report

In conducting its own analysis, the Court concludes that there is nothing scandalous or defamatory in the Report. The bank account numbers, however, may properly be considered confidential information and therefore the Examiner is instructed

12

to delete all bank account numbers included in the Report and its exhibits. With this one exception, the Court will not redact portions of the Report *sua sponte*.

The Court, however, is not unmindful or unsympathetic to the concerns that the Report will be mischaracterized, that information in the report will be misconstrued and interpreted as having the imprimatur of this Court. Many expressly fear that the press will leap to unsubstantiated conclusions of guilt and will broadcast the same. To be clear, the Report is not a document that has the blessing of this Court. It is, as the Examiner notes, a report of his investigation into the affairs of the Debtor and his suggestions for further areas of inquiry. It is one-sided in that the very people sometimes painted in an unflattering light did not respond to the Examiner's inquiries or to the allegations made by others. Some were advised by counsel not to respond; some were not permitted by counsel to respond; some appear to have chosen not to respond out of fear.

So that there is no doubt, the Court cautions all parties who will be given access to the Report, in the words of the Examiner, as to what the report is and what it is not.

> [I]n many instances, the Examiner reports herein statements, often hearsay, which the Examiner has been unable to confirm independently, and with respect to which nobody has told "the other side of the story...." Given the nature of this Report, and the fact that others are likely to continue the Examiner's investigation, it seemed appropriate to include such statements, not so they would be assumed to be fact, but so they could be further investigated and not

13

forgotten. In other instances, the Examiner did solicit and receive responses from parties who were the subject of allegations made by others or reviewed documents that supported such statements. The Examiner has attempted to present its findings in the most balanced manner possible under the circumstances. Inevitably, though, the selection of which statements are discussed or relied on herein required the exercise of judgment by the Examiner. Continued investigation may lead to evidence which supports or contradicts those statements.

* * *

A final note to the reader: other than those of the Gitto Principals themselves, the names most often mentioned in this Report are those of the persons who cooperated with the Examiner, told the Examiner what they remembered, and, in doing so, put themselves at risk of civil or perhaps even criminal sanction. The frequency with which a particular person's name appears, therefore, should not necessarily lead one to conclude that such person directed or profited from the activities detailed [in the Report].

* * *

The Examiner does note a fundamental distinction between the employees discussed herein and the Gitto Principals

14

themselves. In contrast to the significant evidence that the Gitto Principals personally profited from the misconduct described herein, the Examiner has not been provided with any evidence that suggests the employees (with certain possible exceptions noted below) received compensation specifically for their participation. The motivation of most of the employees appears to have been simply to stay in good standing as employees of Gitto Global. Further it is doubtful that all of the employees fully grasped the scale of the fraudulent acts being carried out and the economic stakes of the Gitto Principals' misconduct.

\*\*\*

The Examiner's task was [to] investigate "the existence of any prepetition fraud, dishonesty, incompetence, misconduct, mismanagement or irregularity in the management and business affairs of the Debtor." Many unanswered questions remain as of the filing of this Report.

\*\*\*

Substantial additional investigation is required into the areas identified in this Court's order appointing the Examiner before definitive determinations can be made as to whether the Debtor's estate holds claims against certain other parties....

15

Examiner's Report at 22-23, 128, and 153.

Moreover, to the extent that the press has sought a determination that some or all of the individuals named in the Report are public figures, limited public figures, or quasi-public figures, the Court denies those requests. The press is aware of its responsibilities and the Court again cautions that it expects all parties will be thoughtful in their use and dissemination of the Report and the information contained therein.

**Constitutional Right to Access**

Finally, although members of the press such as the Worcester Telegraph & Gazette argue that they have a constitutional right to see the Report, the cases that hold that there is a First or Fourteenth Amendment right to access are *criminal* cases. The Court is unaware of civil cases that rest upon a finding that public access to pleadings in a civil cases is constitutionally required and in light of the Court's decision, there is no need for the Court to explore whether such a constitutional right should be found to exist.

**CONCLUSION**

For the reasons set forth herein, the motions to seal are DENIED. The Report shall be made available to all parties and to the public. The motions for access are thus MOOT.

Separate orders shall issue.

Dated: February 9, 2005

Joel B. Rosenthal
Joel B. Rosenthal
United States Bankruptcy Court

16

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

|  |  |  |
|---|---|---|
| In re GITTO GLOBAL CORPORATION, Debtor. | ) ) ) ) | Chapter 11 Case No. 04-45386-JBR |
| GARY GITTO, | ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | |
| WORCESTER TELEGRAM & GAZETTE CORP., MEDIANEWS GROUP, INC., CHARLES L. GLERUM, EXAMINER, and PHOEBE MORSE, UNITED STATES TRUSTEE, | ) ) ) ) ) | |
| Respondents. | ) ) | |

## AMENDED NOTICE OF APPEAL

Gary Gitto, the appellant, appeals under 28 U.S.C. § 158(a) from the order of the bankruptcy judge, Joel B. Rosenthal, entered in this adversary proceeding on the 9th day of February 2005.

The names of all parties to the order appealed from and the names, address, and telephone numbers of their respective attorneys are as follows:

Worcester Telegram & Gazette Corporation

Melissa G Liazos, Esq.
Bingham McCutchen LLP
150 Federal St.
Boston, MA 02110
(617)-951-8000

MediaNews Group, Inc.

Peter J. Caruso, Esq.
Caruso & Caruso, LLP
One Elm Square
Andover, MA 01810
(978)-475-2200

Charles L. Glerum, Examiner

Lisa E. Herrington, Esq.
Choate, Hall & Stewart
53 State Street Exchange Place
Boston, MA 02109
(617) 248-5021

Phoebe Morse, U.S. Trustee

Richard T. King, Esq.
Lisa D. Tingue, Esq.
Office of the U.S. Trustee
446 Main Street
14th floor
Worcester, MA 01608
(508) 793-0555

Respectfully submitted,

Dated: February 16, 2005

   /S/  David M. Nickless
David M. Nickless, Esq.
Nickless & Phillips, PC
495 Main Street
Fitchburg, MA 01420
BBO No. 371920
(978) 342-4590
dnickless.nandp@verizon.net


   /S/  Max D. Stern
Max D. Stern, Esq.
Stern, Shapiro, Weissberg
 & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114
BBO No. 479560
(617) 742-5800
mdstern@sswg.com

2

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| In re GITTO GLOBAL CORPORATION, Debtor. ) ) ) ) ) | Chapter 11 Case No. 04-45386-JBR |
| GARY GITTO, ) ) Appellant, ) ) v. ) ) WORCESTER TELEGRAM & GAZETTE ) CORP., MEDIANEWS GROUP, INC., ) CHARLES L. GLERUM, OFFICIAL ) COMMITTEE OF UNSECURED ) CREDITORS, and RICHARD T. KING, ) ) Respondents. ) | |

## STATEMENT OF ELECTION

Pursuant to Federal Rule of Bankruptcy Procedure 8001(e), the appellant, Gary Gitto, hereby elects to have his appeal, the notice of which is filed contemporaneously on this date, be heard by the United States District Court.

Mr. Gitto notes that this appeal is related to the pending case of LaSalle Business Credit v. Gary Gitto, et al., No. 04-12227- DPW.

Dated: February 15, 2005                    Respectfully submitted,

1

/S/  David M. Nickless
David M. Nickless, Esq.
Nickless & Phillips, PC
495 Main Street
Fitchburg, MA 01420
BBO No. 371920
(978) 342-4590
dnickless.nandp@verizon.net


/S/  Max D. Stern
Max D. Stern, Esq.
Stern, Shapiro, Weissberg
 & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114
BBO No. 479560
(617) 742-5800
mdstern@sswg.com

2

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| In re GITTO GLOBAL CORPORATION,<br>Debtor.<br><br>GARY GITTO,<br><br>     Appellant,<br><br>     v.<br><br>WORCESTER TELEGRAM & GAZETTE<br>CORP., MEDIANEWS GROUP, INC.,<br>CHARLES L. GLERUM, OFFICIAL<br>COMMITTEE OF UNSECURED<br>CREDITORS, and RICHARD T. KING,<br><br>     Respondents. | Chapter 11<br>Case No. 04-45386-JBR |

## MOTION FOR STAY OF ORDER

Gary Gitto, hereby moves this Court to stay the Further Order Regarding Report of Chapter 11 Examiner dated February 9, 2005. In support of his motion, Mr. Gitto states the following:

1.     On Wednesday, February 9, 2005, the Court held a hearing regarding various parties' motions requesting that the Examiner's Report be sealed.

2.     At the hearing, the Court ordered that the Examiner's Report would be made available to the public.

3.     Mr. Gitto filed a Notice of Appeal on February 15, 2005, along with a Statement of Election requesting that the appeal be heard by the United States District Court.

4.    The release of the Examiner's Report to the public would cause irreparable injury to Mr. Gitto and would moot his pending appeal.

5.    At the hearing, Mr. Gitto's counsel made an oral motion that the Court stay any public release of the Examiner's Report pending appeal. Afterward, in its order, the Court provided that public release would not be made until February 23, 2005, to permit the parties time to seek appellate relief. Accordingly, Mr. Gitto believes that he has already complied with the requirements of Federal Rule of Bankruptcy Procedure 8005 that he seek a stay in this Court prior to requesting one from the district court. However, this motion is filed out of an abundance of caution.

Dated: February 15, 2005                                  Respectfully submitted,


                                                          /S/  David M. Nickless
                                                          David M. Nickless, Esq.
                                                          Nickless & Phillips, PC
                                                          495 Main Street
                                                          Fitchburg, MA 01420
                                                          BBO No. 371920
                                                          (978) 342-4590
                                                          dnickless.nandp@verizon.net


                                                          /S/  Max D. Stern
                                                          Max D. Stern, Esq.
                                                          Stern, Shapiro, Weissberg
                                                          & Garin, LLP
                                                          90 Canal Street, Suite 500
                                                          Boston, MA 02114
                                                          BBO No. 479560
                                                          (617) 742-5800
                                                          mdstern@sswg.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| In re GITTO GLOBAL CORPORATION, Debtor. )<br><br>GARY GITTO, )<br><br>Appellant, )<br><br>v. )<br><br>WORCESTER TELEGRAM & GAZETTE CORP., MEDIANEWS GROUP, INC., CHARLES L. GLERUM, OFFICIAL COMMITTEE OF UNSECURED CREDITORS, and RICHARD T. KING, )<br><br>Respondents. ) | Chapter 11<br>Case No. 04-45386-JBR |

## MOTION FOR STAY OF ORDER

Gary Gitto, hereby moves this Court to stay the Further Order Regarding Report of Chapter 11 Examiner dated February 9, 2005. In support of his motion, Mr. Gitto states the following:

1.    On Wednesday, February 9, 2005, the Court held a hearing regarding various parties' motions requesting that the Examiner's Report be sealed.

2.    At the hearing, the Court ordered that the Examiner's Report would be made available to the public.

3.    Mr. Gitto filed a Notice of Appeal on February 15, 2005, along with a Statement of Election requesting that the appeal be heard by the United States District Court.

2/15/05 stay denied,

Joel B. Rosenthal