UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| *In re:*<br><br>**GITTO GLOBAL CORPORATION,**<br><br>DEBTOR.<br><br>―――――――――――――――――<br><br>GARY GITTO,<br><br>Appellant,<br><br>v.<br><br>WORCESTER TELEGRAM & GAZETTE CORP., MEDIANEWS GROUP, INC., CHARLES L. GLERUM, EXAMINER, and PHOEBE MORSE, UNITED STATES TRUSTEE<br><br>Appellees. | CHAPTER 11<br>Case No. 04-45386 JBR<br><br><br><br><br><br><br><br>**APPEAL**<br>**No. 05-cv-10334 DPW** |

## OPPOSITION TO GARY GITTO'S
## MOTION TO STAY PENDING APPEAL

Appellee and Intervenor-Plaintiff Worcester Telegram & Gazette Corporation ("WT&G"), respectfully submits this Opposition to the Motion for Stay of the Bankruptcy Court's Order of February 9, 2005 Releasing the Report of the Examiner, filed by Appellant Gary Gitto ("Gitto"), which seeks to deny the public's legitimate interest in the subject matter of the Report by preventing the release of the same. The Bankruptcy Court correctly ruled that the Examiner's Report was a public judicial record. Because Gitto has no prospect of demonstrating that the Bankruptcy Court's ruling was an abuse of discretion, his request for a stay should be denied.

LITDOCS/590013.1

-2-

## STATEMENT OF FACTS[1]

On September 24, 2004, Gitto/Global Corporation (the "Debtor"), a plastics compounds manufacturer based in Lunenburg, Massachusetts, filed a voluntary Chapter 11 petition. Recognized as a "national leader" in the plastics compounding industry, the company was founded by Gary Gitto, his sister, Nancy, and Frank Miller in 1992.[2] Charles Gitto (Gary Gitto's father) was named chairman of the Debtor in 1994. See Gitto books raise concern: bankruptcy officer's filing, September 29, 2004 Worcester Telegram & Gazette.

Gary and Charles Gitto previously were the subject of news reports in late 2003 and early 2004 after being arrested on charges of assaulting two Leominster police officers. The Gittos pleaded not guilty to the charges, which were covered extensively in the local press. See e.g., FBI expert will examine Gitto police tapes, Worcester Telegram & Gazette (February 10, 2004); Gittos plead innocent to cop assault, Worcester Telegram & Gazette (January 16, 2004); Plastics executives charged with assault, Worcester Telegram & Gazette (December 10, 2003); Plastics executives arrested, Worcester Telegram & Gazette (December 9, 2003). In an unrelated matter, in January 2004, the company agreed to pay $250,000 to settle a civil case brought by the Attorney General's Office alleging violations of the state's air pollution and hazardous waste

---

[1] WT&G recognizes that the Court is currently presiding over the related civil suit entitled LaSalle Business Credit, LLC v. Gitto, et al., 1:04-cv-12227-DPW (D. Mass) and is well-versed in the allegations against Gitto and others. Accordingly, it has sought to restrict the fact section to those facts sufficient to show the compelling public interest in the contents of the Report, in their entirety and as it relates to Gitto, and the procedural history regarding the Report.

[2] See Affidavit of Thomas Doherty in Support of Emergency Motion by Debtor for Entry of Agreed Interim Order Authorizing Debtor-in-Possession to Obtain Post-Petition Financing Pursuant to Section 364 of the Bankruptcy Code, Granting Liens, Security Interests, and Superpriority Claims, and Scheduling Final Hearing ("Doherty Affidavit"), ¶ 2; Gitto books raise concern: bankruptcy officer's filing, Worcester Telegram & Gazette (September 29, 2004).

laws.  See January 15, 2004 Attorney General's Office Press Release (available at http://www.ago.state.ma.us).

Shortly before the Debtor's bankruptcy filing, the Board of Directors appointed Mr. Thomas Doherty of Argus Management Corporation to serve as its Chief Restructuring Officer. Doherty Affidavit, ¶ 1. Mr. Doherty's initial review of the Debtor's accounting records indicated that the Debtor "likely participated in significant questionable business practices and accounting irregularities" before declaring bankruptcy. Id. at ¶ 5. The irregularities allegedly included overstating the company's revenue "through fictitious sales, inflated asset base, and obtaining the benefits of float being provided by various financial institutions." Id. at ¶ 6. This "questionable conduct" appeared to have been ongoing for several years. Id. at ¶ 6.

All of the Debtor's approximately 80 employees were laid off before the bankruptcy filing and the plant was shut down. See generally Gitto/Global files for bankruptcy, Boston Business Journal (September 27, 2004). Based on his preliminary review of the Debtor's books and records, Mr. Doherty concluded that that as of September 2004, the Debtor had liabilities of at least $50,000,000, including more than $28,000,000 to LaSalle Business Credit, LLC ("Lasalle"), $3,000,000 to Clinton Savings Bank, and $4,000,000 to Fleet Bank. Doherty Affidavit, ¶ 11.

Following the Debtor's bankruptcy filing, more information about the alleged actions of the Debtors and its top executives, including Gitto, came to public light. According to news accounts, during a meeting of creditors on or about October 1, 2004, Mr. Doherty said that he found "two sets of books containing vastly divergent financial information." Gitto Kept Two Sets of Books; 40-50 to be rehired, Worcester Telegram & Gazette (October 2, 2004). One set of books showed approximately $1 million in accounts payable but the second set showed

-4-

approximately $12 million. See id. In addition, press accounts reported that Mr. Doherty discovered that the company had issued post-dated checks worth more than $2 million. See id.

The filing of the 69-page complaint - and the alleged improprieties stated therein - seeking $30 million in damages on behalf of LaSalle, the Debtor's largest creditor, in the related civil suit before this Court generated still further public attention about this case. See LaSalle Business Credit, LLC v. Gitto, et al., 1:04-cv-12227-DPW (D. Mass). See also Gitto accused of bilking $18.8M from lender in 'Secret Garden', Worcester Telegram & Gazette (November 2, 2004).

Understandably, the revelation of these alleged improprieties made this case the subject of intense and legitimate public interest and scrutiny. See e.g., Gitto books raise concern: bankruptcy officer's filing, Worcester Telegram & Gazette (September 29, 2004). Mr. Doherty has been contacted by certain governmental authorities about the Debtor's alleged financial irregularities. See Doherty Affidavit, ¶ 12.

On October 19, 2004, the Bankruptcy Court entered an order (the "Examiner Order"), appointing Charles L. Glerum and the law firm Choate, Hall & Stewart, as Chapter 11 Examiner (the "Examiner") of the Debtor. The Examiner Order directed the Examiner to "begin an investigation into the existence of any prepetition fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management and business affairs of the Debtor." See Application for and Certificate of Appointment of Chapter 11 Examiner, filed October 15, 2004 at ¶ 4.A. The Order also required the Examiner to file a report with the Bankruptcy Court within forty-five (45) days of entry of the Order and, initially, required the Examiner to serve the Report on parties in interest. See id. at ¶4.E. The Examiner subsequently sought to file his Report

under seal and restrict access, an attempt that was opposed by various parties-in-interest, including WT&G.

Following a hearing on the various motions for access to the Report, the Bankruptcy Court ordered the Examiner to file his Report under seal with the Court by January 7, 2005. See Order Regarding Report of Chapter 11 Examiner. The Examiner also was required to provide each individual named in the report with a copy of only that portion of the Report relating to the individual. See id. Thereafter, any person seeking to keep sealed all or part of the Report was required to file a motion requesting such relief by January 25, 2005. See id.

Pursuant to this Order, the Bankruptcy Court received and reviewed approximately twenty-six motions seeking to seal or redact the entirety or certain portions of the Report, which WT&G and others opposed. See Memorandum of Decision with Respect to Further Order Regarding Report of Chapter 11 Examiner at p. 2 ("Memorandum of Decision"). After conducting a further hearing on the matter, the Court denied the various motions to seal and ordered the Examiner to file publicly a corrected Report on February 23, 2005.[3] See Further Order Regarding Report of Chapter 11 Examiner (the "Order"). It is this order that Gitto seeks to stay pending his appeal.

## ARGUMENT

### GITTO HAS NOT AND CANNOT MEET THE STANDARD FOR ISSUANCE OF A STAY

This Court has the power to stay proceedings pending appeal pursuant to Fed. R. Civ. P. 62 and Fed. R. Bankr. P. 8005. To satisfy the standard for the issuance of a stay, Gitto must

---

[3] The bankruptcy court ordered the Examiner to correct the Report "to reflect those changes he believes should be made for the sake of completeness and accuracy" and to redact "bank account numbers," which the Court considered confidential information, but otherwise to file the Report as is. Order at ¶ 1.

-6-

establish that "there is a strong likelihood of success on the merits of its appeal; that [he] will suffer irreparable harm if a stay is not granted; that the harm will outweigh any harm opposing parties will suffer if a stay is granted; and that the public interest would be furthered by the granting of a stay." Eck v. Dodge Chemical Co. (In re Power Recovery Systems, Inc.), 950 F.2d 798, 804 n. 31 (1st Cir. 1991), citing Morgan v. Kerrigan, 523 F.2d 917, 920 (1st Cir.1975)); see also In re Miraj and Sons, Inc., 201 B.R. 23, 26 (Bankr. D. Mass. 1996). "Failure to meet even one of the criteria justifies denial." In re Power Recovery Systems, 950 F.2d at 804 n. 31 (citation omitted); Miraj, 201 B.R. at 26 ("[A] stay pending appeal should not be granted if any of the factors is entirely absent.").

As shown below, the record in this case demonstrates that Gitto cannot meet this rigorous standard and that his motion for a stay should be denied.

    1.    <u>Gitto cannot demonstrate a strong likelihood of success on the merits of his appeal</u>.

The Bankruptcy Court's order making the Report publicly available is reviewed for abuse of discretion. Nixon v. Warner Communications, Inc., 435 U.S. 589, 599 (1978); F.T.C. v. Standard Fin. M'gmt Corp., 830 F.2d 404, 411 (1st Cir. 1987). A court can abuse its discretion only by "neglecting to consider a significant factor that appropriately bears on the discretionary decision, by attaching weight to a factor that does not appropriately bear on the decision, or by assaying all the proper factors and no improper ones, but nonetheless making a clear judgmental error in weighing them." Henry v. INS, 74 F.3d 1, 4 (1st Cir. 1996); Independent Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg., Co., 864 F.2d 927, 929 (1st Cir. 1988).

As evident from the care that went into the Bankruptcy Court's sixteen page memorandum of decision, Gitto has no prospect of demonstrating that the court abused its discretion in denying Gitto's motion to seal the Report. Gitto does not contend (nor could he)

-7-

that the Bankruptcy Court applied the wrong standard of law; nor does his motion advance any new reasons in support of sealing the Report. Instead Gitto's request for relief is premised on the very same arguments already properly rejected by the Bankruptcy Court. Specifically, Gitto's motion (and presumably his forthcoming appeal) is based on his belief that the Report "contains highly prejudicial allegations and conclusions against [Gitto]" and that, as such, release of the Report will "irreparably impair Mr. Gitto's ability to obtain a fair trial in any ensuing criminal proceeding." See Motion for Stay at ¶ 2 and 8.

As the Bankruptcy Court found, that the Report contains information that Gitto may consider personally discomforting or embarrassing -- including allegations of potential criminal activity or fraud -- does not justify sealing the Report from public scrutiny.[4] See Memorandum of Decision at p. 12. Instead, under section 107 of the Bankruptcy Code and the public's common law right of access, a party seeking impoundment faces a "heavy burden," which requires him to "come forward with particular facts that demonstrate the material at issue is scandalous or defamatory."[5] See Memorandum of Decision at p. 11; see also 11 U.S.C. § 107(b)(2) (allowing bankruptcy court to impound papers filed with the court only to "protect a person with respect to scandalous or defamatory matter"). As the Bankruptcy Court found after

---

[4] Indeed, proofs of claim and adversary complaints filed in bankruptcy courts routinely include allegations of misconduct, including intentional misconduct, against the fiduciaries of corporate debtors, which remain "prejudicial," in Appellant's parlance, absent further proceedings (not to mention the allegations of related criminal indictments, which are equally subject to public scrutiny once on file with a court).

[5] Indeed, at common law, a finding of good cause sufficient to support an impoundment order must be based on a "particular factual demonstration of potential harm and not on conclusory statements." Anderson v. Cryovac, 805 F.2d 1, 7 (1st Cir. 1986). This particular factual demonstration, furthermore, must outweigh the public's "substantial stake and interest in the proceedings at bar." Standard Financial Management, 830 F.2d at 412.

undertaking its own analysis, the Report does not contain scandalous or defamatory materials warranting a sealing order that deprives the public of its right of access to judicial records. See Memorandum of Decision at p. 12.

The Bankruptcy Court also properly rejected Gitto's argument that the Report should be sealed because disclosure might taint the pool of prospective jurors in any ensuing criminal trial. As the court observed, "many of the individuals advancing such argument are already defendants in a civil action pending in the United States District Court . . . (Civil Action # 04-12227-DPW) where the allegations are substantially similar to information which the Examiner was told and included in the Report." Memorandum of Decision at p. 12. Gitto does not offer any explanation as to how the court's determination possibly could be an abuse of discretion, nor has he explained why information that already is publicly available in one case file should be sealed when it appears in the Bankruptcy Court's file.

Even more fundamentally, Gitto has not demonstrated a realistic threat to his or any one else's fair trial rights. The fact that publicity about a case has been widespread or that jurors have obtained some knowledge about a case does not prove that a defendant's fair trial rights have been violated. United States v. Stackpole, 811 F.2d 689, 697 (1st Cir. 1987). See also Patton v. Yount, 467 U.S. 1025, 1035 (1984) ("[T]he relevant question is not whether the community remembered the case, but whether the jurors ... had such fixed opinions that they could not judge impartially the guilt of defendant[s]"); Mu'Min v. Virginia, 500 U.S. 415 (1991) (barrage of publicity before murder trial that included numerous items of inadmissible, prejudicial information did not require questioning of individual jurors about the content of the publicity, even where eight of twelve individuals seated admitted some exposure to pretrial publicity).

Through jury voir dire, "a court can identify those jurors whose prior knowledge of the case would disable them from rendering an impartial verdict." Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 15 ((1986). In this manner, criminal defendants in other cases have received fair trials despite far greater publicity than has accompanied this bankruptcy case. United States v. Anguillo, 897 F.2d 1169, 1180-1184 (1st Cir.), cert. denied, 498 U.S. 845 (1990); United States v. Moreno Morales, 815 F.2d 725, 730-36 (1st Cir.), cert. denied, 484 U.S. 966 (1987). Under these circumstances, Gitto cannot demonstrate that the Bankruptcy Court abused its discretion by rejecting his claims of prejudicial pretrial publicity.

    2.    <u>The public interest would best be served by denying a stay</u>.

The very nature of the relief sought by Gitto is contrary to the public interest. There is a undisputed historical tradition of access to civil judicial proceedings and records. See Nixon, 435 U.S. at 597 ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents. ... In contrast to the English practice, American decisions generally do not condition enforcement of this right on a proprietary interest in the document or upon a need for it as evidence in a lawsuit.") (internal citation and footnotes omitted). This right of access stems from the premise that "public monitoring of the judicial system fosters the important values of 'quality, honesty and respect for our legal system.'" Siedle v. Putnam Investments, Inc., 147 F.3d 7, 9-10 (1st Cir. 1998). This presumptive right of access is no mere "paper tiger" and "is not lightly to be deflected." Standard Financial Management, 830 F.2d at 410.

It takes little more than a brief survey of daily media reports to recognize the public's intense interest in questions of corporate governance, particularly as it relates to the impact of corporate fiduciaries' decisions on the fiscal health of the companies they manage (including

private ones) and the public institutions that may finance them. Indeed, in recent years, the bankruptcy courts have become an important source of information to the public on the financial impact of questionable corporate management (whether in the form of intentional misconduct or simply poor judgment). This point is illustrated in the present case, which involves public allegations concerning a corporation and individuals who previously have been the subject of criminal and civil charges and a bankruptcy that has negatively impacted a significant number of the Debtor's employees and the community. The impact on the community and the community's understandable interest in how the bankruptcy system adjudicates these allegations of improper business conduct strongly militates in favor of public access and against a stay.

   3. <u>The balancing of potential harms favors the denial of a stay.</u>

   Gitto's contention that he will suffer irreparable harm absent a stay is premised on his argument that releasing the Report will prevent him from obtaining a fair trial in any criminal proceeding. As shown above, however, the Bankruptcy Court properly rejected Gitto's fair trial claim. Gitto therefore has failed to show any cognizable harm -- let alone irreparable harm -- would result from the denial of a stay.

   In contrast, the unjustified denial of the public's right of access indeed is a form of irreparable harm that strongly supports the denial of the requested stay. <u>Globe Newspaper Co.</u> v. <u>Pokaski</u>, 868 F.2d 497, 507 (1st Cir. 1989) ("even a one to two day delay impermissibly burdens the First Amendment"); <u>Nebraska Press Ass'n</u> v. <u>Stuart</u>, 427 U.S. 539, 561 (1976) ("As a practical matter ... the element of time is not unimportant if press coverage is to fulfill its traditional function of bringing news to the public promptly.").

   Finally, Gitto's additional argument that a stay is necessary because, absent a stay, the Report will issue publicly and his appeal will be mooted is also insufficient. While such a

-11-

concern is a factor to be considered, it is simply that - a factor - and does not relieve Gitto from otherwise meeting the standard required for a stay. This argument, furthermore, has no weight here where Gitto has failed to demonstrate any prospect of success on appeal. Nor does such an argument outweigh the compelling public interest in this case, which would be irreparably harmed by the issuance of a stay.

In sum, the Bankruptcy Court applied the correct legal standard and reached the correct legal ruling in determining that Gitto had failed to carry his burden of overcoming the public's presumptive right of access to the Examiner's Report. Because Gitto has failed to demonstrate any prospect of success on appeal, his motion for a stay should be denied.

## CONCLUSION

WHEREFORE, for the foregoing reasons, WT&G respectfully requests that the Court deny Appellant Gary Gitto's Motion for Stay of the Bankruptcy Court's Order of February 9, 2005 Releasing the Report of the Examiner.

**WORCESTER TELEGRAM & GAZETTE CORPORATION,**

By its attorneys,

/s/ Aaron M. Wais

---

Jonathan M. Albano, BBO #013850
Aaron M. Wais, BBO #651445
Melissa G. Liazos, BBO #650564
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA  02110-1726
(617) 951-8000

Dated: February 21, 2005

LITDOCS/590013.1

-12-

## CERTIFICATE OF SERVICE

I, Aaron M. Wais, do hereby certify that on this 21st day of February, 2005, I caused copies of the foregoing **OPPOSITION TO GARY GITTO'S MOTION TO STAY PENDING APPEAL** to be served electronically and via fascimile on the foregoing parties:

Max D. Stern
Stern, Shapiro, Weissberg & Garin
Suite 500
90 Canal Street
Boston, MA 02114
Fax: 617-742-5858

Charles L. Glerum
Lisa E. Herrington
Choate, Hall & Stewart
Exchange Place
53 State Street
Boston, MA 02109
Fax: 617-248-4000

Peter J. Caruso
Caruso & Caruso, LLP
One Elm Square
Andover, MA 01810
Fax: 978-475-1001

Richard T. King
Office of the U.S. Trustee
Suite 200
600 Main Street
Worcester, MA 01608
Fax: 508-793-0558


                                                 /s/ Aaron M. Wais
                                                 Aaron M. Wais