UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ ) | | |
| In re GITTO GLOBAL CORPORATION, ) | | |
| Debtor. ) | Case No. 05-10334-DPW | |
| ) | | |
| ) | | |
| GARY GITTO, ) | | |
| ) | | |
| Appellant, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| WORCESTER TELEGRAM & GAZETTE ) | | |
| CORP., MEDIANEWS GROUP, INC., ) | | |
| CHARLES L. GLERUM, EXAMINER, ) | | |
| and PHOEBE MORSE, UNITED STATES ) | | |
| TRUSTEE, ) | | |
| ) | | |
| Respondents. ) | | |
| _____) | | |

**MEMORANDUM IN SUPPORT OF APPELLANT'S
EMERGENCY MOTION FOR STAY OF THE BANKRUPTCY COURT'S
ORDER OF FEBRUARY 9, 2005 RELEASING THE EXAMINER'S REPORT**

**Statement of the Case**

This appeal concerns the Report of the Examiner appointed by the Bankruptcy Court

("Court") pursuant to 11 U.S.C. §1104.  The statutory duties of the Examiner are to "investigate

the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the

debtor's business and the desirability of the continuance of such business, and any other matter

relevant to the case or to the formulation of a plan" and to "file a statement of any investigation"

and "transmit a copy or a summary of any such statement to any creditors' committee . . . and to

such other entity as the court designates."  11 U.S.C. §§ 1106(a)(3) and (4).

Here, the Examiner has produced a lengthy report which, while concededly preliminary – a "foundation for continued investigation" – nevertheless contains scathing allegations and conclusions against Gary Gitto throughout.  The report paints a harsh picture of alleged fraud, misappropriation and other misconduct.  Almost without exception, the contents of the report adversely affect Mr. Gitto's reputation, as graphically demonstrated by the fact that in order to comply with the Bankruptcy Court's disclosure order, to serve affected parties with portions that identify them, virtually the entire report had to be delivered to him.[1]

Given the nature of the Examiner's role  (a "civil grand jury"[2]), the purpose of the report (to identify potential avenues for further investigation and not to adjudicate claims), and the compressed duration of the investigative process, the allegations are necessarily not the product of adversarial testing and are inescapably one-sided.  The Examiner candidly explains that his report relies on hearsay and statements which have not been independently confirmed.  (Memorandum, at 13).  As the Examiner explains, "it seemed appropriate to include such statements, not so they would be assumed to be fact, but so they could be further investigated and not forgotten."  (Id.)  Similarly, the report refers throughout to the "Gitto Principals," without differentiation, because "the Examiner lacks the information necessary to allocate precisely among the three[.]"[3]  Likewise, the Examiner recognizes that the Report lacks the "other side of the story" (Id.), mostly because individuals have asserted their privileges not to

---

[1] The Court has scheduled a hearing on Appellant's motion for stay on Tuesday, February 22, 2005, at 9:00 a.m.  Appellant will then submit those portions of the Report related to him, together with his motion to seal.

[2] Matter of Baldwin United Corp., 46 B.R. 314, 316-17 (W.D. Ohio 1985).

[3] Report, p. 1.

testify and to prevent their attorneys from revealing confidences. (Id.) For all these reasons, the Examiner notes, "[c]ontinued investigation may lead to evidence which supports or contradicts th[e] statements [contained in the report]." (Memorandum, p. 14).

In the Bankruptcy Court, Appellant Gary Gitto moved to seal the Report. Two newspapers, the Worcester Telegram & Gazette and the Sentinel & Enterprise, intervened to request public access to the Examiner's Report. The Examiner opposed these requests. (Exhibit A). Numerous others moved to impound the report as well. Appellant argued that the Report was not a record presumptively available to the public, and if it is, there is a compelling interest in impounding it. He pointed out that a federal grand jury is currently conducting an investigation and that indictments are highly likely. He requested that the Court impound the report to protect his right to a fair trial in any ensuing criminal prosecution.

The Court ruled on February 9, 2005. First, it held that since the document had been filed with the Court, it was necessarily a public document under 11 U.S.C. §107. Second, it held that under §107, the only available ground for impoundment is §107(b)(2), which requires a showing that the Report contains information which is "scandalous or defamatory." The Court interpreted this to mean that the movant must produce proof that the information is untrue. The Court held that Local Rule 9018-1(a), which authorizes impoundment to prevent a "genuine risk of substantial harm," adds no authority to that set forth in §107. And, although the Court recognized a common law power to impound a court's documents, it held that the standards for exercise of this power are precisely the same as those under §107. Finally, the Court found that as none of the movants had provided proof of the inaccuracy of the Report, the motions were all denied. It ordered the Report to made public by February 23, 2005.

3

**Procedural History**

On September 23, 2004, the Gitto Global Corporation filed a voluntary petition for relief under Chapter 11 of Title 11 of the U.S. Bankruptcy Code. On October 19, 2004, the Bankruptcy Court ("Court") entered an order approving the appointment of an Examiner to investigate allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management and business affairs of Gitto Global Corporation. The Court ordered the Examiner to file his Report on or before January 7, 2005.

On December 23, 2004, the Worcester Telegram & Gazette Corporation moved to intervene and filed a motion for public access to the Examiner's Report. On January 5, 2005, the MediaNews Group, Inc. (publisher of the Sentinel & Enterprise Newspaper) also filed a motion to intervene and obtain public access to the Examiner's Report.

On January 7, 2005, the Examiner filed his Preliminary Report under seal with the Court. The Examiner was ordered to provide each person named or referenced in the Report with a copy of only those portions of the Report that relate to those individuals. The Examiner's Report contained highly prejudicial allegations and conclusions against the Appellant, Gary Gitto.

On January 25, 2005, the appellant (along with numerous other interested parties) moved to impound the Report from public access, but did not oppose the disclosure of the Report to certain interested parties, under seal, including the Creditor's Committee, LaSalle Business Credit, LLC, and the United States Trustee.

On Wednesday, February 9, 2005, the Court held a hearing regarding various parties' motions requesting that the Examiner's preliminary report be sealed. At the hearing, the court ordered that the Examiner's Report be made available to the public. Appellant's counsel

promptly made an oral motion that the court stay any public release of the Examiner's report pending appeal. Afterward, the Court issued its Further Order Regarding Report of Chapter 11 Examiner ("Order") providing that public release would not be made until February 23, 2005, to permit the parties time to seek appellate relief.

On Tuesday, February 15, 2005, Appellant filed a Notice of Appeal, along with a Statement of Election requesting that the appeal be heard by the United States District Court. On that same day, Appellant filed a Motion for Stay of Order with the Court; that motion was denied by the Court on the evening of February 15, 2005. Because the release of the Examiner's preliminary report to the public would cause irreparable injury to Appellant, and moot his pending appeal, he has filed an emergency motion for stay with this Court.

## Argument

In order to obtain a stay pursuant to Federal Rule of Bankruptcy Procedure 8005, Appellant must show: (1) that he is likely to succeed on the merits on appeal; (2) that he will suffer irreparable harm if relief is not granted; (3) that this harm will be greater than the injury the non-moving parties will suffer if the stay is granted; and (4) that the stay will not harm the public interest. In re Public Service Co. of New Hampshire, 116 B.R. 347, 348 (Bankr D.N.H. 1990). Although Appellant must satisfy each of the four conditions, not all of the four conditions need to be given equal weight. In re Great Barrington Fair and Amusement, Inc., 53 B.R. 237, 239 (Bankr.D.Mass. 1985). Instead, the conditions must be viewed in light of the importance of a party's right to appeal. Id., quoting In re Howley, 38 B.R. 314, 315 (Bankr.D.Minn. 1984).

Judged by this standard, Appellant is clearly entitled to the requested relief.

5

I.    **Appellant Has a Strong Likelihood of Success.**

Appellant has a strong case on appeal.  See In re Public Service Co. of New Hampshire, 116 B.R. at 349 (this factor does not mean that the movant has a literal "likelihood" of success on the merits, but that he has a "substantial case" or a "strong case on appeal").  In its Order, the Court erroneously concluded that the Examiner's Report was a public record, employed the wrong standards to determine whether to impound the Report (if a public document), and failed to consider whether disclosure would present a genuine risk of substantial harm.

A.    The Examiner's Report is Not a Judicial Document Subject to Public Access.

The Bankruptcy Judge concluded, in his Memorandum, that the Examiner's Report is a public record.  Memorandum of Decision with Respect to Further Order Regarding Report of Chapter 11 Examiner ("Memorandum"), at 5.  His reasoning was as follows.  First, 11 U.S.C. §107(a)  provides that any "paper filed in a case under this title and the dockets of the bankruptcy court are public records and open to examination by an entity at reasonable times without charge."  (emphasis added).  Next, he noted, 11 U.S.C. §1106(a)(4)(A) requires that the Examiner "file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement of irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate."  (emphasis added).  Therefore, he reasoned, "once an examiner's report is 'filed' with the Court, it becomes 'a paper filed with the court' and thus falls within the scope of Bankruptcy Code section 107."  (Memorandum, at 5).

But this syllogism is based upon an erroneous premise, since the reference to "filing" in §1106, with respect to an Examiner's (or Trustee's) report, clearly does not mean the "filing" in

the public docket contemplated by §107. This is made evident by the very next subsection, §1106(a)(4)(B), which provides that the Examiner shall also "transmit a copy or a summary of any such statement to any creditor's committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates." Obviously, if the report was already public, there would be no need to require a copy be transmitted to the creditor's committee, nor any need for the court to designate any other entity to receive it.

There is nothing in the Bankruptcy Code which indicates a departure from the consistent policy in the federal system that submission of a document to a court does not necessarily, by that fact alone, make it public. Although the Bankruptcy Judge acknowledged that the right to inspect judicial documents is not absolute, see Nixon v. Warner Communications, Inc., 435 U.S. 589, 598 (1978), he failed to recognize that not all documents filed with a court are considered judicial documents subject to public access. In re Boston Herald, Inc., 321 F.3d 174, 180 (1st Cir. 2003), citing United States v. Gonzalez, 150 F.3d 1246, 1255 (10th Cir. 1998).

A judicial document is one "on which the court relies in determining a litigant's substantive rights." Federal Trade Commission v. Standard Financial Management, 830 F.2d 404, 408 (1st Cir. 1987), citing Anderson v. Cryovac, Inc., 805 F.2d 1, 13 (1st Cir. 1986); United States v. Amodeo, 71 F.3d 1044, 1050 (2nd Cir. 1995)(the weight of the presumption is low where documents play only a negligible role in the performance of the court's judicial duties). Those documents which play no role in the adjudicatory process lie beyond the reach of the public's right of access. Standard Financial Management, 830 F.2d at 404; Globe Newspaper Co. v. Pokaski, 868 F.2d 497, 509 (1st Cir. 1989)("[T]he First Amendment attaches only to those records connected with proceedings about which the public has a right to know.").

Here, the Examiner's Report is not a judicial document subject to the public right of access. It will not be used to adjudicate the substantive rights of any party. See In re Apex Oil Co., 101 B.R. 92, 98 (E.D.Mo. 1989)(the purpose of the disclosure statement, which incorporates the examiner's report, is not to determine substantive rights but is primarily a source of information upon which creditors make an informed judgment about the merits of a plan of reorganization). Rather, the Examiner's Report is a "foundation for continued investigation" (emphasis added), and a blueprint for identifying potential claims.

In fact, the role of an examiner in a bankruptcy case is more akin to a "civil grand jury" in that the examiner's duties are to investigate potential areas and targets for recovery. Matter of Baldwin United Corp., 46 B.R. 314, 316-317 (W.D. Ohio 1985). While 11 U.S.C. § 1106 requires an examiner to file a report of his investigation, the Examiner's Report does not have the binding effect on the Court or a party of those of a special master, arbitrator, or magistrate. Id. at 316. Instead, the Examiner's Report is designed as a useful tool for the parties involved in the bankruptcy proceeding, rather than as a potential "conduit of information to fuel the litigation fires of third-party litigants." Id.

The comparison to the grand jury is an apt one, given both the similar investigate roles, and the need for secrecy. In the criminal grand jury process, secrecy is needed to encourage witnesses to cooperate fully, and to protect the subjects of the process whom, at the end of the investigation may be vindicated. See e.g. Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 219 (1979). Here, in opposing the Worcester Telegram's motion for public disclosure, the Examiner described his report in almost precisely these terms:

> Nor does the fact that the Examiner's efforts may shortly be
> concluded eliminate the need for secrecy. "[T]he interests in grand

jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities." <u>Globe Newspaper Co. v. Pokaski</u>, 868 F.2d 497, 510 (1st Cir. 1989), quoting <u>Douglas Oil Co. v. Petrol Stops Northwest</u>, 441 U.S. 211, 218 (1979). Similary, the interests of the Examiner in secrecy are not eliminated when his activities have ended.  This is particularly true in this context as the Report in question is an interim report.  The findings of the Examiner are not final; the Examiner's investigation, whether it is carried on by the Examiner, LaSalle Bank, the United States Trustee's Office or the Creditors' Committee, will be continued.  Some of the preliminary findings of the Examiner's Report related to third parties may be shown to be incorrect and it could be grossly unfair to those third parties to have the Examiner's preliminary findings published in the newspapers and naturally interpreted as final.  Moreover, it is equally inappropriate to identify at this time the parties who are cooperating with the Examiner in the preparation of his interim Report as those parties, with the bright light of publicity shown upon them, may become more reticent about taking to the Examiner or subsequent investigators.

(Examiner's Opposition, ¶ 12).

      B.      Even if the Report is a Public Document, the Bankruptcy Judge Employed the Wrong Standards to Determine Whether to Impound the Report, and Failed to Consider Whether Disclosure of the Report Presents a Genuine <u>Risk of Substantial Harm</u>.

The Bankruptcy Judge recognized that even if the Report is a public record, he still had authority to order it impounded, under two sources: (1) Section 107(b), and (2) the inherent power of a court over its own records and files.  However, he employed the wrong standard under each.

      1.      The Bankruptcy Judge Erroneously Held that in Order to Obtain Relief Under §107(b), Appellant was Required to Prove that the <u>Report was Untrue</u>.

Section 107(b) requires the Bankruptcy Court to seal the Examiner's Report if the

information in the Report is scandalous or defamatory. <u>See</u> 11 U.S.C. §107(b)(2).  The

Bankruptcy Judge correctly noted that scandalous or defamatory material is material that would

cause "a reasonable person to alter their [sic] opinion of [a party] based on the statements

contained therein, taking those statements in the context in which they appear."  <u>In re Phar-Mor,</u>

<u>Inc.</u>, 191 B.R. 675, 679 (Bankr. N.D.Ohio 1995).  (Memorandum, at 8-9).  However he went on

to conclude that the information must also be shown to be not true.  (Id., at 9).

This was error.  A showing of falsity is certainly not part of the classic definition of

"scandalous or defamatory" matter.  <u>See</u>, e.g., <u>Near v. State of Minnesota ex rel. Olson</u>, 283 U.S.

697, 710 (1931)(defining defamatory as injuring reputation and scandalous as circulating charges

of reprehensible conduct, whether criminal or otherwise); <u>see also</u> Black's Law Dictionary, 7th

Edition (defining defamatory as "[of a statement or communication] tending to harm a person's

reputation, usually by subjecting the person to public contempt, disgrace, or ridicule, or by

adversely affecting the person's business" and scandalous matter as "a matter that is both grossly

disgraceful (or defamatory) and irrelevant to the action or defense").  And it leads to the illogical

and highly impractical proposition that to seal exceedingly prejudicial statements in a

<u>preliminary report</u>, a person must prove them false in paper motions filed before the litigation is

even begun.   In this case, indeed, the irony is that appellant fails to obtain relief because he has

not, at this stage, in emergency motion practice, established the falsity of statements which even

the Examiner explicitly conceded may prove to be untrue on further investigation.  Certainly, the

authority relied upon by the court does not stand for any such broad proposition, and none of it

deals with the special problem of an interim investigative report.[4/]

2.    The Court Misconstrued the Extent of Its Inherent Power Over Its
Records and Failed to Consider Whether Disclosure of the Report
<u>Presents a Genuine Risk of Substantial Harm</u>.

The Bankruptcy Court recognized that "[e]very court has supervisory power over its own

records and files, and access has been denied where court files might have become a vehicle for

improper purposes." <u>Nixon v. Warner Communications, Inc.</u>, 435 U.S. 589, 597-98 (1978).

And it noted that Local Rule 9018-1 specifically provides that the court may impound papers

that impose a "genuine risk of harm" to the party. (Memorandum, at 9-11). Furthermore, it

acknowledged that this rule represents an effort to exercise the full extent of the court's common

law power. (Memorandum, at 7). Nevertheless, it ultimately concluded that "sound discretion"

under this power should be exercised no more broadly than under Section 107(b) which, as noted

above, was erroneously taken to require proof of falsity.

This too was error. Even if there were a presumptive right of public access to the

Examiner's Report, there is a countervailing compelling interest in denying it. Courts have

---

[4/] In <u>In re Continental Airlines, Inc.</u>, 150 B.R. 334, 339 (D.Del.1993), the court found that
certain portions of the fee reviewer's reports had been improperly sealed under the authority of
§107(b) since the factual information contained therein was truthful and not defamatory. The
court, however, reviewed the record and found that there was nothing in the record that indicated
that the factual portions of the fee reviewer's reports, which had been taken from the fee
applicants' own applications and from other parts of the record, contained defamatory
statements. <u>Id.</u> In <u>In re Whitener</u>, 57 B.R. 707, 708 (Bankr.E.D.Va. 1986), the debtor sought to
expunge his bankruptcy records so that credit bureaus would no longer report that he had
discharged his debts in bankruptcy. The court found that his motion invoked §107(b)(2) and
denied the motion based on the fact that it was undisputed that the information in the papers on
file in the debtor's case was true, i.e., that he had indeed discharged his debts in bankruptcy. <u>Id.</u>
at 709.

looked to the traditional compelling interest test to determine whether a party should be denied

an otherwise presumptive constitutional right of access to a judicial document.  See Globe

Newspaper Co. v. Pokaski, 868 F.2d 497, 505 (1st Cir. 1989); Globe Newspaper Co. v. Superior

Court for the County of Norfolk, 457 U.S. 596, 606-607 (1982).  In applying this test, courts

have recognized that "[n]o right ranks higher than the right of the accused to a fair trial."  Press-

Enterprise Co. v. Superior Court of California, 464 U.S. 501, 508 (1984).  Recognizing that

adverse publicity can endanger the ability of a defendant to receive a fair trial, courts have

approved impoundment of judicial records for this specific reason.  See Gannett Co. v. Pasquale

443 U.S. 368, 378 (1979)("To safeguard the due process rights of the accused, a trial judge has

an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity."); In re

Globe Newspaper Co., 729 F.2d at 53 ("The trial court must consider the nature and extent of

publicity that the case is likely to arouse and determine whether alternatives less restrictive than

closure will protect the accused's right to a fair trial.").

     It is well-known that Appellant is the target of an ongoing federal investigation.  It is not

an exaggeration to say that publication of the Report would poison the atmosphere and

irreparably impair Appellant's ability to obtain a fair trial.  This would be especially unfair given

the untested, one-sided, and hearsay nature of the evidence and the preliminary nature of the

Examiner's conclusions.  Indeed, publication of the reason that the Examiner has only one "side

of the story" – the individuals' invocation of their undoubted Fifth Amendment rights (which

reason is itself discussed in the Report) – would only serve to compound the damage.

     Similar to the judicial documents the newspaper company sought in In re Globe

Newspaper Company, the Examiner's Report contains "untested" material in the form of hearsay

and raw investigatory information that, if publicized, would clearly cause irreparable damage

before Appellant has had an opportunity to challenge that information.  In re Globe Newspaper

Co., 729 F.2d at 58.  See also Amodeo, 71 F.3d at 1050 (court should not readily disclose raw,

unverified information and should consider whether the nature of the materials is such that there

is a fair opportunity for the subject to respond to any accusations contained therein).  At this

initial stage in the bankruptcy proceedings, the fair trial interests of Appellant are at their zenith,

especially if one considers the seriousness of the allegations against him, the intense publicity

that the release of the Examiner's Report would generate, and the extremely prejudicial material

to which the press seeks access.  In re Globe Newspaper Co., 729 F.2d at 59.  Thus, protecting

Appellant's right to a fair trial is undeniably a compelling government interest.  See Press-

Enterprise, 464 U.S. at 508.

> 3.    The Court Failed to Consider Whether Disclosure of the Report
>        Presents a Genuine Risk of Substantial Harm.

Because of its erroneously limited reading of its powers and responsibilities, the

Bankruptcy Judge never considered whether, in the words of the Local Rule, disclosure of the

report would "present a genuine risk of substantial harm."  In particular, it never considered

whether public disclosure would irreparably impair Appellant's ability to obtain a fair trial in

likely ensuing criminal proceedings in this district.  The closest the Memorandum comes to

discussing this issue is the following:

> While the Court is mindful that the disclosure that
> an individual [] is a potential criminal defendant
> may taint the pool of prospective jurors, many of
> the individuals advancing such argument are
> already defendants in a civil action pending in the
> United States District Court for the District of
> Massachusetts (Civil Action #04-12227-DPW)

> where the allegations are substantially similar to
> information which the Examiner was told and
> included within the Report.

(Memorandum, at 12).  Appellant, however, is not complaining about being identified as a

potential criminal defendant.  Rather, his concern is with the disclosure of highly prejudicial

allegations of fact and conclusions, in the report of a judicial officer appointed by the court to

conduct an investigation and make a report.   It should be obvious that the conclusions of a

judicial officer are profoundly different from the allegations of an interested party in terms of the

harm they would inflict on the fair trial prospects of appellant.  The fact that the officer has

hedged his conclusions with numerous caveats, based on the preliminary and incomplete nature

of his investigation, should not be taken as a reason for appellant not to worry – as suggested by

the Bankruptcy Judge (Memorandum, at 13-15).  On the contrary, the conceded interim and

tentative nature of the Examiner's work product establishes a compelling reason not to disclose,

precisely as the Examiner has argued himself.  (Exhibit A, p. 4).

## II.    The Balance of Harms Favors the Appellant.

There is no doubt that the balance of harms favors the Appellant on his request for a stay.

On the most basic level, if the order of disclosure is not stayed, the entire issue will simply

become moot once the material finds its way into the public domain.  Thus, a stay is

indispensable to any further consideration of the merits.  More fundamentally, and looking

toward the underlying injury, release of the Report undeniably would poison Appellant's

prospects for a fair trial in this district.

On the other hand, no substantial countervailing interest will be harmed.  Appellant does

not object to disclosure to the interested parties, to wit, the Creditors' Committee, LaSalle

Business Credit, LLC, and the United States Trustee, so long as that disclosure is made under

seal.  Nor will the public interest, or the interest of the press be harmed.  In this respect, it is

relevant that the press has access to the materials filed in Civil Action #04-12227-DPW.  What

they will not have are the preliminary and tentative conclusions of the Examiner, the concededly

one-sided and untested statements and raw data collected by him under his powers, and the

speculative ideas for further investigation he has developed.  Just as with grand jury material,

whatever public interest there is in disclosure of this information is completely outweighed by

the irreparable harm to appellant.

### Conclusion

For the reasons set forth above, this Court should stay the Bankruptcy Court's Order.


Respectfully submitted,


/s/ Max D. Stern
Max D. Stern
BBO No. 479560
Lillian Hirales
BBO No. 652698
Stern, Shapiro, Weissberg
 & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114


Dated: February 21, 2005


G:\SSWG\Gitto\Gitto-Global Bankruptcy\memo.motion to stay.wpd


-15-

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) | Case No. 04-45386-JBR |
| GITTO/GLOBAL CORPORATION, | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**EXAMINER'S OPPOSITION TO MOTION OF INTERVENTOR/PLAINTIFF
WORCESTER TELEGRAM & GAZETTE CORPORATION TO
GAIN PUBLIC ACCESS TO EXAMINER'S REPORT**

Now comes Charles L. Glerum and Choate, Hall & Stewart, the Chapter 11 Examiner of

the Debtor Gitto Global Corporation (the "Examiner"), and submits this Opposition to the

motion of the Interventor/Plaintiff Worcester Telegram & Gazette Corporation (the "Worcester

Telegram") to gain public access to the Examiner's Preliminary Report (the "Report"), which is

to be filed under seal on or before January 7, 2005. In support of this Opposition, the Examiner

states as follows:

1.    On September 24, 2004, the Debtor Gitto Global Corporation (the "Debtor") filed

a voluntary Chapter 11 petition commencing this action.

2.    On October 19, 2004, this Court entered the Order Allowing Application for and

Certificate of Appointment of Chapter 11 Examiner (the "Examiner Order"), pursuant to which

this Court authorized the appointment of Charles L. Glerum and the law firm of Choate, Hall &

Stewart, as Chapter 11 Examiner of the Debtor.

3.    Pursuant to the Examiner Order, the Examiner conducted an investigation and is preparing a Preliminary Report (the "Report"), which he expects to file under seal on or before January 7, 2004.

4.    On December 8, 2004, the Examiner filed a motion, entitled Examiner's Amended Motion to Submit Under Seal and Have Impounded the Examiner's Preliminary Report (the "Impoundment Motion") pursuant to which the Examiner sought to file the Report under seal and to have the Court impound the Report.

5.    On December 9, 2004, the Court allowed the Impoundment Motion, "subject to allowance of any future motion of any Party in Interest seeking release of report."

6.    The Worcester Telegram seeks to intervene in this action for the limited purpose of requesting public access to the Examiner's Report. The Examiner does not oppose the intervention by the Worcester Telegram but does oppose its request for public access to the Report.

7.    The Worcester Telegram makes a series of arguments in favor of public access, none of which survive close scrutiny. The Worcester Telegram first argues that the public has a constitutional right to the Examiner's Report. Memorandum of Intervenor/Plaintiff Worcester Telegram & Gazette Corporation In Support of Motion for Public Access To Examiner's Report ("Worcester Telegram Memorandum"), pp. 5-10. In order to buttress that argument, the Worcester Telegram references the right of the public "to attend criminal proceedings and inspect court records filed in such cases." Id. at p. 5, citing Globe Newspaper Co. v. Pokaski, 868 F.2d 497 (1st Cir. 1989). Asserting that the basis for that right is the public's need for a full understanding of the criminal process, the Worcester Telegram goes on then to extrapolate a

right of the public to full understanding of the civil process as well and therefore a "First

Amendment right of access to civil proceedings and the court records of those cases." Id. at 6.

8.      The Worcester Telegram's argument in this regard fails in two respects. First, it

fails to address a long recognized limitation on the public's right of access. Second, it fails to

address the special aspects of the Examiner's role.

9.      As the First Circuit notes in Globe Newspaper Co., 868 F.2d at 509 (citations

omitted):

> The public has no right to attend grand jury proceedings, and
> therefore, has no right to grand jury records. In contrast to
> criminal trials, "grand jury proceedings have traditionally been
> closed to the public and the accused". . . and the Supreme Court
> has reported that the proper function of our grand jury system
> depends upon the secrecy of the grand jury proceedings. . .

10.     As recognized by the Court in In Re Baldwin United Corporation, 49 B.R. 314,

316-317 (Bankr. S.D. Ohio, 1985) the Examiner's duties are "aptly characterized . . . as

comparable to that of a 'civil grand jury' to ascertain legitimate areas of recovery and

appropriate targets for recovery." Accordingly, as with a criminal grand jury, there should be no

First Amendment right to the Examiner's records or Report, and as with the criminal grand jury,

the proper function of the Examiner may, at least periodically, depend upon the secrecy of the

Examiner's proceedings and findings.

11.     Moreover, as the court further noted in Globe Newspaper Co., 868 F.2d at 509-

510 (emphasis in original), "the First Amendment right of access attaches only to those

governmental processes that as a general matter benefit from openness." The Examiner's

investigation and report process does not, as a general matter, benefit from openness, and there

should be no presumption in favor of openness.

12.     Nor does the fact that the Examiner's efforts may shortly be concluded eliminate the need of secrecy. "[T]he interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities." Id. at 510, quoting Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 218 (1979). Similarly, the interests of the Examiner in secrecy are not eliminated when his activities have ended. This is particularly true in this context as the Report in question is an interim report. The findings of the Examiner are not final; the Examiner's investigation, whether it is carried on by the Examiner, LaSalle Bank, the United States Trustee's Office or the Creditors' Committee, will be continued. Some of the preliminary findings of the Examiner's Report related to third parties may be shown to be incorrect and it could be grossly unfair to those third parties to have the Examiner's preliminary findings published in the newspapers and naturally interpreted as final. Moreover, it is equally inappropriate to identify at this time the parties who are cooperating with the Examiner in the preparation of his interim Report as those parties, with the bright light of publicity shown upon them, may become much more reticent about talking to the Examiner or subsequent investigators.

13.     The Worcester Telegram also alleges, Worcester Telegram Memorandum p. 8, that "the Examiner has failed to identify a compelling state interest that, on the facts of this case, justify [sic] a sealing order." Again, given the peculiar nature of the Examiner's role here, analogous to that of a grand jury, it is not at all clear that it is the Examiner's obligation to identify a compelling interest. However, the Examiner has come up with such a compelling interest and the Worcester Telegram, in its Memorandum at p. 4, states as much: "The Examiner expressed his belief that 'publicizing the Report may chill the cooperation of parties subject to the continued investigation and more importantly, those with knowledge of the relevant

circumstances, and thereby impede completion of the investigation and possible recovery actions.'" Nothing more should be required.

14.     But the Worcester Telegram dismisses those concerns of the Examiner as "conclusory allegations." Certainly the witnesses are not so quick to dismiss the Examiner's concerns. As the Examiner advised counsel for the Worcester Telegram prior to the Worcester Telegram filing its motion, the Examiner has received at least one telephone call from a cooperating party complaining strongly about the fact that when those discussions with the Examiner became public the cooperating party was put "in jeopardy." Nothing more than that should be required. The Examiner can hardly put persons on the stand to say they are terrified that their testimony may become public. Nor can the telephone message identifying the caller be made part of the public record. The Examiner's point here is to protect these people who come forward with information. That is the obvious compelling state interest.

15.     The Worcester Telegram continues its arguments on p. 9 of its Memorandum by stating that "there is no reason to conclude that sealing the Examiner's Report will be an effective means of insuring that public disclosure of information about allegations of wrongdoing does not continue unabated." Sure it will. At least it will ensure that there will be no disclosure of the contents of the Report.

16.     The Worcester Telegram then goes on to note that, "The mere fact that judicial records may reveal potentially embarrassing information is not in itself sufficient reason to block public access." Worcester Telegram Memorandum p. 11. That is not the Examiner's concern. The Examiner's concern is that third parties may be unfairly prejudiced and witnesses put in jeopardy.

17.    In contrast to those arguments, the Worcester Telegram's discussion of the <u>United States v. Amodeo</u>, 71 F.3d 1044 (2d Cir. 1995) ("<u>Amodeo II</u>") is informative.  <u>See</u> Worcester Telegram Memorandum pp. 12-13.  The Worcester Telegram notes that in <u>Amodeo II</u> the court required the trial court to keep under seal the part of the report prepared by a Court Officer containing certain unsworn accusations; the remainder of the report, which "contained little unverifiable hearsay," was to be released.  <u>Id.</u> at p. 13.  The Examiner's Report in this case is replete with unsworn accusations and hearsay and all of the reasons that the <u>Amodeo II</u> court kept the report in question in that case under seal are applicable here.

18.    Finally, the Worcester Telegram suggests that an "interest in promoting [the] continued cooperation [of the various interviewees] could be served by redacting their names and other identifying information from the Report."  Worcester Telegram Memorandum p. 16.  Unfortunately, the Examiner is concerned that is not the case and that the redaction necessary to protect the interviewees is likely to reduce the report to gibberish and raise a whole new and different set of issues with respect to public disclosure.

3784920v1

WHEREFORE, for the foregoing reasons the Examiner respectfully requests that the

Court deny the Worcester Telegram's motion for public access to the Examiner's Preliminary

Report and grant the Examiner such other relief as is just in the circumstances.


Dated:  January 5, 2005

Respectfully submitted,

CHARLES L. GLERUM AND CHOATE,
HALL & STEWART, as Chapter 11 Examiner


Charles L. Glerum, P.C. (BBO# 195240)
John F. Ventola (BBO# 567972)
Lisa E. Herrington (BBO# 655678)
CHOATE, HALL & STEWART
Exchange Place
53 State Street
Boston, Massachusetts  02109
(617) 248-5000

3784920v1