EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **WORLDCOM, INC., et al.** | : | **Cases No.  02-13533(AJG)** |
| | : | **(Jointly Administered)** |
| Debtors. | : | |
| | : | |

<u>**ORDER GRANTING THE MOTION OF THE UNITED STATES TRUSTEE**</u>
<u>**FOR THE APPOINTMENT OF AN EXAMINER**</u>

Upon the oral motion of the United States Trustee ("U.S. Trustee") this date to limit and shorten notice and upon the submissions of the U.S. Trustee filed on July 22, 2002, to consider the Motion of the United States Trustee for the Appointment of an Examiner (the "Examiner") in the above-captioned chapter 11 cases (the "Motion"); and after hearing the arguments of counsel this date on the record; the Court finds that the notice given, under all the circumstances herein, is appropriate; the Court further finds that the above-captioned debtors ("Debtors") have not objected to the relief sought, and in the Court's considered judgment based on the record this date, the Court is satisfied that it is appropriate to grant the Motion.  Accordingly it is hereby

ORDERED, that the oral motion of the U.S. Trustee to limit and shorten notice is GRANTED; it is further

ORDERED, that the Motion Of The United States Trustee For The Appointment Of An Examiner is GRANTED, and the United States Trustee is directed to appoint an Examiner pursuant to 11 U.S.C. § 1104(c)(2); it is further

ORDERED, that the Examiner shall investigate any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement or irregularity in the arrangement of the affairs of any of the Debtors by current or former management, including but not limited to issues of accounting irregularities.  In conducting such investigation, the Examiner shall use best efforts to coordinate with, and avoid any unnecessary duplication of, any investigations conducted by the U.S. Department of Justice, the Securities and Exchange Commission ("SEC"), other governmental agencies, or the corporate monitor appointed by order of the United States District Court for the Southern District of New York ("Corporate Monitor"); it is further

ORDERED, that in addition to the responsibilities set forth above, and to the extent necessary in light of the ongoing efforts of the Debtors and the Corporate Monitor, the Examiner shall oversee the affairs of the Debtor to the extent necessary to preserve all records of the Debtor, regardless of their format, that may be necessary to assist the Examiner in the performance of his or her duties or for any lawful investigation by any agency of state or federal government; it is further

ORDERED, that the Debtors and all of the Debtors' affiliates, subsidiaries and other companies under their control are directed to fully cooperate with the Examiner in conjunction with the performance of any of the Examiner's duties; it is further

ORDERED, that neither the Examiner nor the Examiner's representatives or agents shall make any public disclosures concerning the performance of the Examiner's duties until the Examiner's report is filed with the court, except that the Examiner shall convey to the SEC,

Corporate Monitor, and the U.S. Department of Justice any information requested by them; it is further

ORDERED, that the Examiner shall prepare and file the report required by 11 U.S.C. § 1106(a)(4) within 90 days of the date of appointment unless such time shall be extended by order of the Court; and it is further

ORDERED, that nothing in this Order shall impede the right of the United States Trustee or any other party to request any other relief, including but not limited to the expansion of the Examiner's powers or appointment of a trustee.

Dated: July 22, 2002
      New York, New York


                                        s/Arthur J. Gonzalez
                                        United States Bankruptcy Judge

3

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------ x
                                             :
In re:                                       :          Chapter 11
                                             :
ENRON CORP., et al.,                         :          Case No. 01-16034 (AJG)
                                             :
          .            Debtors.              :          Jointly Administered
                                             :
------------------------------------------------------ x
```

**FIRST INTERIM REPORT OF NEAL BATSON,
COURT-APPOINTED EXAMINER**

**September 21, 2002**

TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................... 1
      A.    Enron Prior to Events of Fall of 2001 ...................................... 1
      B.    Fall 2001 Events ............................................................ 2
      C.    The Bankruptcy Filings and Subsequent Events ........................ 9
      D.    Appointment of Examiner................................................... 9

II.   EXECUTIVE SUMMARY ............................................................ 13
      A.    The Selected Transactions ................................................ 13
      B.    Ongoing Investigation .................................................... 19

III.  INTERIM REPORT ON SELECTED SPE TRANSACTIONS ..................... 22
      A.    Introduction................................................................. 22
      B.    Story of the NewPower Warrants ........................................ 24
      C.    Selected Transactions...................................................... 36
      D.    Legal and Accounting Principles ........................................ 37
      E.    Typical Enron FAS 140 Transactions .................................... 58
      F.    The Cerberus Transaction ................................................ 67
      G.    The Nikita Transaction ................................................... 91
      H.    The Hawaii Transaction .................................................. 101
      I.    The Backbone Transaction ............................................... 117
      J.    The SO$_2$ Transaction ................................................. 135
      K.    The Destec Transaction................................................... 147
      L.    Interim Nature of Report.................................................. 157

IV.   FUTURE REPORTS ................................................................ 158

two official committees appointed in the Bankruptcy Case: (i) the Official Committee of Unsecured Creditors, which was initially formed on December 12, 2001 (the "Creditors' Committee") and (ii) the Employment Related Issues Committee which was formed on March 27, 2002 (the "ERIC").[33]

Under the terms of the April 8th Order, the Examiner is required to file his initial report within 120 days of the entry of the order approving his appointment and shall file interim reports every 120 days thereafter or as otherwise ordered by the Court.

On May 22, 2002, the United States Trustee appointed Neal Batson (the "Examiner") as the examiner contemplated by the April 8th Order. The Court, by Order dated May 24, 2002, approved the United States Trustee's appointment of the Examiner.[34] The Examiner selected Alston & Bird LLP (a law firm in which he is a

---

Newby Class Action, Milberg Weiss Bershad Hynes & Lerach LLP and its bankruptcy counsel, Genovese Joblove & Battista, P.A.

[33] On June 14, 2002, the Debtors, the Creditors' Committee and the ERIC, along with the AFL-CIO and the Rainbow/Push Coalition, filed a joint motion to resolve certain severance claims asserted by former employees. A part of the proposed settlement involves the assignment of what were designated as the 90-day Bonus Avoidance Actions (as defined in the joint motion) to the ERIC for investigation and prosecution. Counsel for the ERIC will bear the expense of the litigation, and the proceeds, if any, from the assertion of the 90-day Bonus Avoidance Actions will inure to the benefit of the class of former employees. By Order dated and entered June 24, 2002, the Court preliminarily approved the settlement reflected in the joint motion. The Court heard arguments relative to the joint motion in August 2002, and by Order dated and entered August 28, 2002, approved the proposed settlement. As a result, the ERIC is now authorized to investigate and prosecute the so-called 90-day Bonus Avoidance Actions. To the extent that the investigation and prosecution of the 90-day Bonus Avoidance Actions overlaps with the Examiner's investigation, the Examiner will not review those particular transfers. Moreover, by Order dated May 8, 2002 (Docket No. 3587), the Court has directed the Examiner to investigate whether insider participants in the Debtors' Key Employee Retention Program (the "KERP") should be released with respect to the 90-day Bonus Avoidance Actions. In addition, on September 9, 2002, the Debtors filed with the Court a proposed Order that would defer the release of insiders with respect to the 90-day Bonus Avoidance Actions until the Examiner completes his investigation (Docket No. 6301).

[34] By an Order dated February 21, 2002 (the "February 21st Order") and an Order dated March 6, 2002 (the "March 6th Order"), the Court appointed an examiner for ENA pursuant to Section 1106(b) of the Bankruptcy Code to investigate and file an interim report on, *inter alia*, (i) the adequacy of Enron's assets to repay certain inter-company transfers between ENA and its parent, Enron, and (ii) the allocation of certain overhead expenses to ENA. By Order dated March 12, 2002, Harrison J. Goldin (the "ENA Examiner") was appointed the examiner of ENA. In addition to the requirement that he prepare an interim report, the March 6th Order also directed the ENA Examiner to participate in all meetings of the Cash Management Committee and the Bankruptcy Transaction Review Committee, report any expenditure that

partner) as attorneys to the Examiner ("A&B").  The Examiner also selected Plante &

Moran, LLP ("Plante & Moran") as the primary accounting firm to assist in his

examination, supported by George Benston and Al Hartgraves, professors of accounting

at the Goizueta Business School at Emory University.  The Examiner filed an application

with the Court on May 28, 2002, seeking an order authorizing the employment of A&B.

On June 17, 2002, the Court entered an order approving the appointment of A&B.  The

Examiner submitted an application for the employment of each of Plante & Moran and

Professors Benston and Hartgraves on July 30, 2002.  On September 13, 2002, the Court

entered an order approving the retention of Plante & Moran, and on September 16, 2002,

the Court entered an order approving the retention of Professors Benston and Hartgraves.

This First Interim Report of Neal Batson, Court-Appointed Examiner, constitutes

the Examiner's first report (the "Report").[35]

---

the ENA Examiner deems improper, file with the Court weekly reports relative to the Debtors' cash management and file a monthly report regarding the status of the ENA cash.  The ENA Examiner's role has been expanded, to some extent, in the course of the subsequent months, to include a plan facilitation role with respect to the ENA case.

[35] Any references in this Report to meetings, communications, contacts and actions between the Examiner and third parties are intended to refer to the office of the Examiner, which shall include the Examiner and his professionals.  Therefore, references to any meetings, communications, contacts, and actions taking place between the Examiner and a third party should not be construed as indicating that Neal Batson was present personally for such meetings, communications, contacts or actions.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LASALLE BUSINESS CREDIT, LLC f/k/a )
LASALLE BUSINESS CREDIT, INC.,          )
                                                          )
              Plaintiff,                                )
                                                          )
       v.                                                )        Case No. 04-12227 DPW
                                                          )
GARY C. GITTO, FRANK MILLER,        )
CHARLES N. GITTO, JR., NANCY          )
GITTO PANAGIOTES, JOHN D.             )
TERSIGNI, KATHLEEN M. CARLAND,   )
WILLIAM DEAKIN, JANICE CHAISSON,)
HELEN KOZAK, KINGSDALE CORP.      )
d/b/a J&J CHEMICAL DISTRIBUTORS,   )
and TRADEX CORPORATION,               )
                                                          )
              Defendants,                            )
       and                                               )
                                                          )
FLEET NATIONAL BANK, CLINTON     )
SAVINGS BANK, SOVEREIGN BANK,     )
COMMERCE BANK & TRUST                )
COMPANY, FIDELITY COOPERATIVE    )
BANK, BANKNORTH, N.A.,                   )
FIDELITY INVESTMENTS, INC.,           )
LEOMINSTER CREDIT UNION, and        )
LEHMAN BROTHERS, INC.,                  )
                                                          )
       Trustee Process Defendants,          )
                                                          )
       and                                               )
                                                          )
FIDELITY INVESTMENTS, INC.,           )
DIRECT WOOD & PAPER PRODUCTS,    )
INC., GITTO SALES CORPORATION       )
J-TAN SALES & MARKETING, INC.,       )
HEMISPHERE DISTRIBUTION               )
CORPORATION, LEHMAN BROTHERS,    )
INC., and AWG, LLC,                           )
                                                          )
       Reach-and-Apply Defendants.       )

**MEMORANDUM IN SUPPORT OF MOTION BY NON-PARTIES
CHARLES L. GLERUM AND CHOATE, HALL & STEWART TO QUASH
SUBPOENAS AND FOR THE ENTRY OF A PROTECTIVE ORDER**

The Bankruptcy Court appointed Charles L. Glerum, Esq. and the law firm of Choate, Hall & Stewart as Examiner charged with investigating the affairs of Gitto Global Corporation. On the day before Thanksgiving Defendant Gary Gitto served two third party subpoenas purporting to demand discovery from the Examiner. As the courts have explained in similar cases, discovery of a bankruptcy examiner should not be permitted. See In re Baldwin United Corporation, 46 B.R. 314, 316 (Bankr. S.D. Ohio 1985) (a copy of which is attached to the Examiner's Motion as Exhibit A); Vietnam Veterans Foundation v. Erdman, 1987 WL 9033 at *2 (D.D.C. Mar. 19, 1987) (a copy of which is attached to the Examiner's Motion as Exhibit B). Accordingly, this Court should grant the Examiner's motion to quash the two subpoenas and for entry of a protective order.

## FACTS AND PROCEDURAL HISTORY: THE EXAMINER IS CHARGED TO CONDUCT AN INVESTIGATION ON BEHALF OF THE BANKRUPTCY COURT.

1.     On September 16, 2004, the Board of Directors of Gitto Global Corp. (the "Debtor" or "Gitto Global"), including Gary C. Gitto, appointed Thomas Doherty of Argus Management to serve as the Chief Restructuring Officer of Gitto Global Corporation. Shortly thereafter, the directors and officers of Gitto Global resigned. On September 24, 2004 (the "Petition Date"), Gitto Global filed a petition for relief commencing a case under Chapter 11 of Title 11 of the United States Code (the "Chapter 11 Case"). The case is pending as In re Gitto Global Corporation, United States Bankruptcy Court, District of Massachusetts, Western Division, 04-45386-JBR.

2.     On October 7, 2004, the United States Trustee (the "U.S. Trustee") filed in the Chapter 11 Case the *Motion of United States Trustee to Appoint Chapter 11 Trustee* (the "Trustee Motion," a copy of which is attached to the Examiner's Motion as Exhibit C), which Trustee Motion sought, in the alternative, appointment of an Examiner. As grounds for the

Trustee Motion, the U.S. Trustee cited certain factual allegations set forth in an *Affidavit of Thomas Doherty, CRO of the Debtor* (the "Doherty Affidavit"). In particular, the U.S. Trustee cited Mr. Doherty's allegations that Gitto Global had likely engaged in questionable business practices and accounting irregularities and likely had overstated its annual sales by a significant amount. The U.S. Trustee argued that the appointment of a Chapter 11 Trustee or Examiner would be in the best interests of creditors, as the Chapter 11 Trustee or Examiner could investigate the allegations of fraud and determine whether there is a possible source of recovery for Gitto Global's creditors. A copy of the Trustee Motion was served on David M. Nickless, bankruptcy counsel for Gary Gitto. See Exhibit C to the Examiner's Motion.

3.    The Court held a hearing on the Trustee Motion on October 14, 2004, at which hearing several parties, including the Debtor and the Official Committee of Unsecured Creditors (the "Committee"), responded to the Trustee Motion. Following the hearing on the Trustee Motion, the Court determined not to appoint a Chapter 11 Trustee, but rather entered an order (the "Appointment Order," a copy of which is attached to the Examiner's Motion as Exhibit D) directing the U.S. Trustee to appoint a Chapter 11 Examiner.

4.    The U.S. Trustee consulted with counsel to various parties in the Chapter 11 Case, including counsel to the Debtor, the Committee, LaSalle Business Credit, LLC ("LaSalle") and ORIX Financial Services, Inc. ("Orix"). Following such consultation, the U.S. Trustee appointed Charles L. Glerum ("Glerum") and the law firm of Choate, Hall & Stewart (CH&S, and together with Glerum, the "Examiner") to serve as the Chapter 11 Examiner of the Debtor. On October 19, 2004, the Court entered the Order Allowing Application for and Certifying Application of Chapter 11 Examiner (the "Examiner Order," a copy of which is attached to the Examiner's Motion as Exhibit E). Pursuant to the Examiner Order, the Examiner was directed, by reference

to the Appointment Order, to investigate "the existence of any prepetition fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management and business affairs of" Gitto Global.  The Examiner was further ordered to file a report of the investigation with the Bankruptcy Court.[1]

5.      On October 25, 2004, LaSalle commenced the instant lawsuit against a number of parties involved in the management and the business affairs of Gitto Global, including Gary Gitto, and seeking a preliminary injunction.  A hearing on that preliminary injunction is currently scheduled for December 10, 2004.  In connection with that hearing, this Court has entered one or more orders establishing an expedited discovery schedule.

6.      At the same time, the Examiner has been conducting the examination on behalf of the Bankruptcy Court.  The bulk of the Examiner's investigation has been undertaken by James A. Ring.  From 1965 to 1990 Mr. Ring served as a Special Agent and Supervisory Special Agent of the Federal Bureau of Investigation responsible for the conducting and/or managing of criminal investigations.  From 1990 to the present Mr. Ring has been employed by the law firm of Choate, Hall & Stewart and currently serves as Director of Business Information and Investigative Services at Choate, Hall & Stewart.  In conducting the investigation Mr. Ring has done the following:  (a) Mr. Ring has reviewed substantial records (all of which were produced from persons who are subject to discovery by Gary Gitto and his counsel); (b) Mr. Ring has interviewed numerous witnesses (all of whom are subject to discovery by Gary Gitto and his counsel); (c) Mr. Ring has taken at least one examination pursuant to Federal Rule of Bankruptcy Procedure 2004; and (d) Mr. Ring has exchanged information and documents with various

---

[1] The Examiner Order directed the Examiner to filed the instant report within 45 days after entry of the Examiner Order, *i.e.* December 3, 2004.  The deadline for the Examiner to file an interim report has since been extended by the Bankruptcy Court to December 10, 2004.

parties, including the Federal Bureau of Investigation, the United States Attorney's Office, the Office of the United States Trustee, the Committee, and LaSalle.

7.    On November 24, 2004, Max Stern, Esq., counsel for Gary Gitto, caused a process server to come to the offices of Choate, Hall & Stewart seeking to serve subpoenas on each of Charles L. Glerum and James A. Ring. The subpoena on Mr. Ring seeks to take his deposition at Mr. Stern's office at 2 p.m. on December 2, 2004 and demands production of the following documents:

> All documents, communication, memorandum, notes and the like containing and/or relating to interviews of witnesses concerning the Gitto-Global bankruptcy BNAKR 3 04-45386-JBR.

A copy of the subpoena directed to Mr. Ring is attached as Exhibit F to the Examiner's Motion.

8.    The subpoena for Mr. Glerum was for documents only and requested production by 9:30 a.m. on December 2, 2004 of the following:

> Any and all documents produced or to be produced and/or filed or to be filed with the Bankruptcy court by Frank Miller pursuant to the Bankruptcy Court Rule 2004 examination subpoena in in re Gitto Global Corporation BNAKR # 04-45386 – JBR.

A copy of the subpoena directed to Mr. Glerum is attached as Exhibit G to the Examiner's Motion. The Examiner understands that subpoenas similar to that of Mr. Glerum's were served on the Committee and the Debtor.

## ARGUMENT:  THE COURT SHOULD QUASH THE SUBPOENAS AND SHOULD ENTER A PROTECTIVE ORDER.

Gary Gitto's desire to take a shortcut in civil discovery should not be permitted to jeopardize the integrity of the Bankruptcy Court's process and the Examiner's work product. Accordingly, this Court should quash the subpoenas that Gary Gitto served upon Messrs. Glerum and Ring.

## I.    THE BANKRUPTCY EXAMINER IS NOT SUBJECT TO CIVIL DISCOVERY.

A.    **This Court Should Protect The Integrity Of The Bankruptcy Court Investigation.**

The Bankruptcy Court Examiner is a unique creation of the law.  As the Court explained in Baldwin United, 46 B.R. at 316:

> An Examiner's legal status is unlike that of any other court-appointed officer which comes to mind.  He is first and foremost disinterested and nonadversarial. The benefits of his investigative efforts flow solely to the debtor and to its creditors and shareholders, but he answers solely to the Court.  As was noted in In re Hamiel & Sons, Inc. 20 B.R. 830, 832 (Bankr. S.D. Ohio 1982), an examiner "constitutes a Court fiduciary and is amenable to no other purpose or interested party."

> While § 1106 requires the Examiner to file a "statement" of his investigation, his findings do not have the binding effect on the Court or parties of those of a special master, arbitrator or magistrate; nor do they have the evidentiary character of an opinion by a Court expert appointed pursuant to Rule 706 of the Federal Rules of Evidence.  An Examiner performs the investigative duties of a trustee, and may perform other trustee duties as the Court directs, but he stands on a different legal footing than a trustee.  This is borne out of inferentially at least by § 1109, which fails to include Examiners in the list of parties in interest who "may appear and be heard on any issue in any case under this Chapter."

The Baldwin United Court concluded that the Examiner "has aptly characterized his duties as comparable to that of a 'civil grand jury' to ascertain legitimate areas of recovery and appropriate targets for recovery."  Id., at 316-17.  This is exactly the function of the Examiner in the Gitto Global Chapter 11 case.

Given this situation, this Court should protect the Examiner and the process of the Examiner's investigation from third party discovery.  As the Baldwin United Court went on to say:

> If Examiners in other cases are to perform these "civil grand jury" functions effectively, and if their nonadversarial role is to be maintained, they and the subjects of their investigation must be unhampered by the threat that any information which comes into the Examiner's hands will be fair game for a plethora of anxious litigants, regardless of the limitations on disclosure which the Bankruptcy Court has imposed.  Even absent such limitations on disclosure, we believe that the Examiner, as a nonparty to any proceeding and a nonadversarial

officer of the Court, is entitled to some immunity from the whirlwind of litigation commonly attendant to large Chapter 11 cases.

Id., at 317.

The granting of a Motion to Quash will also serve to maintain the integrity of the judicial process. As the District Court explained in Vietnam Veterans Foundation v. Erdman, 1987 WL 9033 at *2: "judges are excluded from testifying as witnesses at the same trials over which they preside," and "[a] bankruptcy examiner is clothed by the statute with judicial powers; he acts at the behest of the federal bankruptcy court." The Vietnam Veterans Foundation case analyzed whether an examiner could voluntarily testify concerning the findings and conclusions of law in his report. The District Court held that he could not.

> The integrity of the judicial process is directly threatened when litigators are allowed to question directly a court officer about the reasoning behind his official actions, thus courts have prohibited such examination. *See, e.g.*, United States v. Morgan, 313 U.S. 409 (1941) (Secretary of Agriculture); Standard Packaging Corp. v. Curwood, Inc., 365 F.Supp. 134, 137 (N.D. Ill. 1973) (patent examiner); Wood v. General Teamsters Union, Local 406, 583 F.Supp. 1471, 1474 (W.D. Mich. 1984) (arbitrator). The fact that [the Examiner] will testify voluntarily in no way lessens the threat to the integrity of the judicial process.

> [The Examiner] owes a continuing fiduciary responsibility to the bankruptcy court for which he served and that the fruits of his investigation in the [Corporation's] bankruptcy proceeds are "amenable to no other purpose or interested party." Hamiel, 20 Bankr. at 832. [The Examiner] obtained testimony, documents and other information through his court-appointed powers, and thus is cannot serve as the basis for his proffered testimony. As the bankruptcy court in *Baldwin* explained, "the Bankruptcy Code [does not] contemplate [ ] that the Examiner act as a conduit of information to fuel the litigation fires of third-party litigants." 46 Bankr. at 316. A contrary rule would allow the parties to use a bankruptcy examiner as a discovery short-cut and would only invite further demands on such officers, potentially leading to substantial encroachments on judicial integrity and efficiency. *See id.*

Id. See In re Stockbridge Funding Corp., 153 B.R. 654, 656 (Bankr. S.D.N.Y., 1993)

(recognizing a "bankruptcy crimes investigation privilege").

Moreover, the Court should quash the subpoenas served on Mr. Ring and Mr. Glerum for related, practical reasons as well. The Examiner has a limited budget and a limited amount of time in which to complete the Bankruptcy Court's assignment. The Examiner's report, which will be an interim report, is due to be filed by December 10. Notwithstanding the fact that many parties, including Gary Gitto, have exercised their Fifth Amendment privilege not to speak with the Examiner, still there is a substantial amount of information and documents to be gathered, analyzed, and organized. The Examiner's report is due to the Bankruptcy Court in less than two weeks. The Examiner should not be required to respond to discovery requests that would inhibit the completion of his report.

The documents sought from Mr. Ring, his notes, his memoranda, and his communications with Mr. Glerum and others are part and parcel of the Examiner's performance of the "civil grand jury function," just the same as are Mr. Ring's thought processes. Gary Gitto may argue that there is some distinction, in this regard, between Mr. Ring's oral testimony and the documents sought in the subpoenas. That argument is wrong. The documents sought from Mr. Ring and from Mr. Glerum are all part of the Examiner's "civil grand jury function."[2]

**B.    This Court Should Protect The Work Product Immunity Of The Bankruptcy Examiner.**

The Court should also quash the Subpoenas since any information sought thereby, whether testimonial or documentary, is protected by the work product doctrine.

Of course, the work-product doctrine has been well-established ever since Hickman v. Taylor, 329 U.S. 495 (1947), in which the Supreme Court held that an attempt by a party to

---

[2] Mr. Gary Gitto should seek production of the documents from the source that supplied them to the Examiner. To date we do not see any reason why that could not be accomplished. It is conceivable that some of the documents sought of Mr. Glerum could be unavailable to Mr. Gary Gitto, if the Examiner had been given the only copies and if the source could not be identified. If that were the case, then – subject to the entry of an order of this Court to the effect that such production shall not constitute a waiver by the Examiner of any applicable privilege or immunity – the Examiner would be willing to make copies of such documents at the expense of Mr. Gary Gitto.

obtain written statements, private memoranda, and personal recollections prepared by an adverse party's attorney in the course of his legal duties, without showing necessity or justification, "falls outside the arena of discovery." Id. at 510. The work-product doctrine ensures that the attorney has a "zone of privacy" in which to prepare a case. See Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 864 (D.C. Cir. 1980); James Julian, Inc. v. Raytheon Co., 93 F.R.D. 138, 142-43 (D. Del. 1982). The Supreme Court indicated that this protection is not absolute (at least with respect to written statements and documents containing relevant and non-privileged facts), and that discovery might be permitted if the party seeking access establishes adequate reasons. Hickman, 329 U.S. at 511-12. When it came to a witness's oral statement, whether memorialized or not, the Court held that no showing "under the circumstances of this case" would justify an order for production. Id. at 512. However, the Court noted the possibility that this type of material may be discoverable in "a rare situation." Id. at 513.

Federal Rule of Civil Procedure 26(b)(3) [hereinafter "FRCP 26(b)(3)"] substantially codified the doctrine of Hickman v. Taylor with respect to tangible materials. FRCP 26(b)(3) gives protection to:

(a)    Documents or tangible things;

(b)    Prepared by or for a party (i.e., by or for a party or a party's representative);

(c)    In anticipation of litigation or for trial.

FRCP 26(b)(3) applies to "documents and tangible things," while the Hickman definition also encompasses unrecorded and intangible forms of information.

The documents and testimony sought from Mr. Ring are protected as the work product of the Examiner. The protection for work product unquestionably extends to witness statements, investigative reports, and memoranda prepared in anticipation of litigation. See, e.g., 8 C.

WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2024 (1970). Opinion work-product is defined as material that contains "mental impressions, conclusions, opinions, or legal theories of an attorney...." FRCP 26(b)(3). The doctrine protects not only the mental impressions of the attorney himself (i.e. Mr. Glerum), but also the mental processes of persons assisting in trial preparation such as paralegals, consultants, law office personnel and investigators (i.e. Mr. Ring). See FRCP 26(b)(3) advisory committee's note (mentioning protection of mental impressions and subjective evaluations of investigators and claim-agents); Virginia Elec. & Power Co. v. Sun Shipbuilding & Dry Dock Co., 68 F.R.D. 397, 402 (E.D. Va. 1975) (impressions and opinions of person hired by an attorney as part of the attorney's work-product).

In order to qualify for protection, a document must be prepared by an attorney or created for an attorney's use. See In re Grand Jury Proceedings, 473 F.2d 840, 848 (8th Cir. 1973); Natta v. Zletz, 418 F.2d 633, 637-38 (7th Cir. 1969). This protection extends to material prepared "by or for [a] party's representative," such as Mr. Ring, so long as the agent is assisting in preparing for litigation. FRCP 26(b)(3) advisory committee's note ("the weight of authority affords protection of the preparatory work of both lawyers and nonlawyers . . ."); Fine v. Facet Aerospace Products Co., 133 F.R.D. 439, 445 (S.D.N.Y. 1990); In re Conticommodity Services, Inc. Sec. Litig., 123 F.R.D. 574, 578 (N.D. Ill. 1988) (documents prepared by the accountant as an agent for the lawyer would be protected); Sterling Drug Inc. v. Harris, 488 F. Supp. 1019, 1027 (S.D.N.Y. 1980). Thus the fact that Mr. Ring is not himself an attorney is not relevant.

By its terms, FRCP 26(b)(3) applies to materials prepared "by or for another party or by or for that party's representative . . . ." This language refers to a "party". Taken literally, it could be argued that this language of FRCP 26(b)(3) does not apply where a law firm prepares work product in one case, and the work product is sought by subpoena in another case. Any such

-10-

interpretation has been roundly criticized, however.  See 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2024 (1970) (criticizing this interpretation and suggesting a court should issue a protective order).  Moreover, some courts have held that regardless of the language of Rule 26, the work-product protection developed in Hickman encompasses the work product of a non-party.  See United States v. AT&T Co., 642 F.2d 1285, 1301 (D.C. Cir. 1980) (permitting a third party to intervene to assert work-product protection for documents it had prepared); Republic Gear Co. v. Borg – Warner Corp., 381 F.2d 551, 557 (2d Cir. 1967) (holding that Hickman protected nonparty work-product).

There can also be no doubt that Mr. Ring's activities are being conducted in anticipation of litigation.  The whole point of the Examiner's report is to investigate whether there exist causes of action for recovery by representatives of the Chapter 11 estate.  If so ordered, litigation may be brought by the Examiner.  By analogy, communications and documents generated in connection with a corporation's internal legal investigations are routinely held to satisfy the anticipation-of-litigation requirement.  See, e.g., Upjohn Co. v. United States 449 U.S. 383, 399 (1981).  There can be no doubt that an investigation ordered by the Bankruptcy Court meets this requirement.

While the Hickman Court was called to rule on documents and tangible things, the Hickman doctrine also clearly extends to unwritten materials.  The Court held that attempts to secure "personal recollections" prepared by counsel, without any necessity or justification, were prohibited.  Hickman, 329 U.S. at 510.  If Mr. Ring were to be subjected to a deposition, he would be asked about his recollection of numerous witness interviews.  Mr. Ring could only recount those items that he analyzed and deemed significant enough to remember.  Thus, when recounted, the underlying information would be opinion work-product, as it would be strained

-11-

through Mr. Ring's mental processes, perceptions and evaluations. For just this reason, courts have included intangibles within the category of opinion work-product. See In re Grand Jury Subpoena Dated November 8, 1979, 622 F.2d 933, 935 (6th Cir. 1980) (defining work-product as "the tangible and intangible material which reflects an attorney's efforts at investigating and preparing a case, including one's pattern of investigation, assembling of information, determination of relevant facts, preparation of legal theories, planning of strategy, and recording of mental impressions").

There has been some argument from Gary Gitto's counsel that the work product protection was somehow waived when Mr. Ring had discussions with representatives of the Government or of LaSalle. This argument is wrong. To begin with, the Bankruptcy Court expected and understood that the Examiner would, as part of the investigation, exchange factual information with various authorities.[3] Certainly some information is being exchanged among the Government, LaSalle, the Committee and the Examiner. "[B]ecause the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party." In re Grand Jury Subpoena, 220 F.3d 406, 409 (5th Cir. 2000). See AT&T Co., 642 F.2d at 1299; In re Sealed Case, 676 F.2d 793, 818 (D.C. Cir. 1982). Waiver results only when the law firm shows indifference to protecting a strategy. See Chubb Integrated Sys., Ltd v. National Bank of Wilmington, 103 F.R.D. 52, 63 (D. D.C. 1984); In re Sealed Case, 676 F.2d at 818 (D.C. Cir. 1982). Such indifference is most often demonstrated when a lawyer discloses material knowing that it is likely to be seen by an adversary. In re Subpoenas Duces Tecum, 738 F.2d 1367, 1371 (D.C. Cir. 1984) (work-product protection lost when materials provided to adversary); Shulton, Inc. v. Optel Corp., No. 85-2925, 1987 WL 19491 (D.N.J. Nov. 4, 1987); 4 JAMES WM. MOORE

---

[3] Indeed, 18 U.S.C. § 3057 (2004) requires reporting pertinent information to federal law enforcement authorities.

ET AL., MOORE'S FEDERAL PRACTICE ¶ 26.64[4] (2d ed. 1991); 8 C. WRIGHT & A. MILLER,

FEDERAL PRACTICE & PROCEDURE § 2024 AT 210 (1970) (disclosure to third party does not

waive work-product protection unless "it has substantially increased the opportunities for

potential adversaries to obtain the information"). No such disclosure to an adversary has

occurred here.

## II.    GARY GITTO DOES NOT HAVE ANY BONA FIDE NEED TO TAKE DISCOVERY OF THE BANKRUPTCY EXAMINER.

Plaintiff LaSalle sought expedited discovery, on a limited basis, so that it could prepare

its case for a preliminary injunction. Docket No. 49 ("Emergency Motion For Limited Expedited

Discovery"), filed November 1, 2004. Defendant Gary Gitto assented to expedited discovery,

again on a limited basis, so that he could prepare his case in opposition to the preliminary

injunction. Docket No. 52, filed November 4, 2004, at page 1 ("Defendant Gary C. Gitto does

not object to plaintiff's motion for expedited discovery, so long as this Court will allow him also

to take expedited, limited discovery so that he may prepare properly for the December 10, 2004

hearing."). On November 23, this Court approved and entered a stipulation and order permitting

the parties to conduct expedited discovery for this purpose. Docket entry approving Docket No.

113.

Gary Gitto does not need discovery from the Examiner in order to prepare for the

preliminary injunction hearing. The Examiner did not author any primary source documents,

and does not have any firsthand knowledge of the facts. The Examiner, like a "civil grand jury,"

is charged with analysing the documents and interviewing the witnesses. All documents that

sources provided to the Examiner and all parties interviewed by the Examiner are available to

Mr. Gitto.[4] He should go take discovery from them.

---

[4] See footnote 2.

-13-

So why did Gary Gitto serve the Subpoenas on the Examiner?

1. Perhaps Gary Gitto is seeking to take a shortcut in discovery by taking a free ride on the work of the Examiner. That is not a proper reason to undermine the integrity of the Bankruptcy Court investigation. See Baldwin United, 46 B.R. at 316-17.

2. Perhaps Gary Gitto is seeking to impede the function of the Bankruptcy Examiner. That is not a proper purpose for conducting civil discovery.

3. Perhaps Gary Gitto is seeking to learn what the FBI does or does not know in its criminal investigation. That is not a proper purpose for conducting civil discovery.

Where a civil litigant seeks discovery from a non-party under Rule 45, the litigant has a responsibility to protect against undue burden on the non-party. FED. R. CIV. P. 45(c) ("A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena."); Heidelberg v. Tokyo Kikai Seisakusho, Ltd, 333 F.3d 38, 41-42 (1st Cir. 2003) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to *special weight* in evaluating the balance of competing interests") (emphasis added) quoting Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998). In this instance, any benefit to Gary Gitto is far outweighed by the harm to the integrity of the Bankruptcy Court's investigation. See Sec. I.A. supra.

## CONCLUSION

The policy of protecting the Bankruptcy Court's process and the work product immunity warrants quashing the Subpoenas to Messrs. Glerum and Ring -- particularly since Gary Gitto can seek all the discovery he needs from the parties to this action. This Court should quash the Subpoenas, and/or enter a protective order. This will permit the Examiner to complete, unimpeded, his investigation on behalf of the Bankruptcy Court.

Dated: November 29, 2004

Respectfully submitted,
CHARLES L. GLERUM, P.C. and CHOATE,
HALL & STEWART, as Chapter 11 Examiner

Charles L. Glerum, P.C. (BBO# 195240)
Robert M. Buchanan, Jr., P.C. (BBO# 545910)
John F. Ventola (BBO# 567972)
Lisa E. Herrington (BBO# 655678)
CHOATE, HALL & STEWART
Exchange Place
53 State Street
Boston, Massachusetts 02109
(617) 248-5000

I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD FOR
EACH OTHER PARTY BY MAIL/HAND ON
DATE 11-24-04 SIGNATURE

-15-

3773136v1

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS


**Case No. 05-10334-DPW**



**GARY GITTO,**

**v.**

**WORCESTER TELEGRAM & GAZETTE
CORP., MEDIANEWS GROUP, INC.,
CHARLES L. GLERUM, EXAMINER, and
PHOEBE MORSE, UNITED STATES TRUSTEE**

_____

**ON APPEAL FROM AN ORDER**

**OF THE BANKRUPTCY COURT**

_____

**REPLY BRIEF OF APPELLANT**

_____

Max D. Stern
BBO No. 479560
Lillian Hirales
BBO No. 652698
Stern, Shapiro, Weissberg
 & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114
(617) 742-5800

Dated: March 14, 2005

## TABLE OF AUTHORITIES

### CASES

In re 50-Off Stores, Inc., 213 B.R.646 (Bankr.W.D.Tex. 1997)..................................................2, 3

In re Apex Oil Co., 101 B.R. 92 (Bankr. E.D.Mo. 1989)...........................................................1, 2

In re Astri Investment Management & Securities Corp., 88 B.R. 730 (D.Md. 1988)................4, 5

In re Boston Herald, Inc., 321 F.3d 174 (1st Cir. 2003)...................................................................2

In re First American Health Care of Georgia, Inc., 208 B.R. 992 (Bankr.S.D.Ga. 1996)............. 3

In re Gilman Services, Inc., 46 B.R. 322 (Bankr.D.Mass. 1985)....................................................3

In re Ionosphere Clubs, Inc., 156 B.R. 414 (S.D.N.Y. 1993)................................................1, 2, 4-5

In re UAL Corp., 307 B.R. 80 (Bankr.N.D.Ill. 2004)....................................................................4

United States v. Amodeo, 71 F.3d 1044 (2nd Cir. 1995)................................................................2

### STATUTES

11 U.S.C. §107.............................................................................................................................1

11 U.S.C. §341.............................................................................................................................4

## ARGUMENT

Appellant submits this reply in response to certain of the contentions of the appellees.

1. None of the parties question the proposition that documents obtained and relied upon by the Examiner and <u>not</u> included in his Report do not constitute public records and there is no arguable statutory, common law or constitutional right to their disclosure.  <u>See,</u> e.g., <u>In re Apex Oil Co</u>, 101 B.R. 92, 98 (Bankr. E.D.Mo. 1989); <u>In re Ionosphere Clubs, Inc.,</u> 156 B.R. 414, 433 (S.D.N.Y. 1993).[1/]  On the other hand, the bankruptcy judge held and all of the appellees contend that statements or documents which a bankruptcy examiner does "choose" to include in his Report are <u>ipso</u> <u>facto</u> public under §107(a).  <u>See</u> Bankruptcy Court Memorandum, A. 220, n. 5; Brief of Appellee Worcester Telegram & Gazette Corp. ("T&G Brief"), p. 9 n. 3; Brief of Appellee MediaNews Group, Inc. ("MediaNews Brief"), p. 6; Brief of Appellee, The Examiner ("Examiner's Brief"), p. 5.  And, appellees contend, if the Examiner <u>has</u> chosen to include some matter within the Report, then the bankruptcy judge is without power to impound it except on the limited grounds explicitly set forth by Congress in §107(b).  In their view, in other words, an examiner has unilateral discretion as to what to place in the public record, and that discretion is virtually unreviewable by the bankruptcy judge.  But the notion that an examiner has superior

---

[1/] Each of these cases held that documents not included in the examiner's report were not judicial records and not presumptively public under §107(a).  Neither court considered or resolved any requests to impound the report itself.  In <u>In re Ionosphere</u>, no party objected to disclosure of any report itself, so that issue was not before the court.  In <u>In re Apex Oil Co.</u>, the only issue as to the report itself concerned the procedure which was to be followed for objections by parties to disclosure of portions of the report.

powers than the court, when, after all, he is only an attorney serving at the court's discretion[2/] is illogical in the extreme. Thus, even if the appellees are correct that, under §107(a), submitting a document to the court makes it presumptively public, without more, the court clearly must have power to remove a document from the public record, just as an examiner has power to include it. That power of the court is to be exercised in accordance with the balancing principles set forth in United States v. Amodeo, 71 F.3d 1044 (2nd Cir. 1995), and In re Boston Herald, Inc., 321 F.3d 174 (1st Cir. 2003). Further, given the essentially arbitrary and standardless basis for inclusion, or non-inclusion, of documents in the public record – to wit, the Examiner's unbridled discretion – the court should give little weight to the presumption of disclosure in making the balance.

2. The appellees are at great pains to establish the extensive investigative powers of an examiner. See T&G Brief, pp. 16-18; MediaNews Brief, pp. 4-5; Examiner's Brief, pp. 6-7. But this is not in dispute. An examiner has broad powers to investigate fraud, other misconduct, and mismanagement. He is authorized to conduct a "fishing expedition," unencumbered by the usual relevance limitations of discovery in a lawsuit. In re Ionosphere Clubs, Inc., 156 B.R. at 432. And he may indeed investigate fraud allegedly committed by former management of the debtor. However, it is precisely the extraordinary breadth of the examiner's net which is a strong reason, among others, for a reviewing court to accord any presumption of publicity only the slightest weight in a balancing of interests. See In re 50-Off Stores, Inc., 213 B.R.646, 654 (Bankr.W.D.Tex. 1997) ("To be sure, the public is deemed to have a 'right to know' about the

---

[2/] "While the Examiner is an officer of the Court, he has no more rights and responsibilities than any other attorney also bearing the denomination of 'officer of the court.' The Examiner's findings are no more binding on the Court than those of other attorney's." In re Apex Oil Co., 101 B.R. at 99.

affairs of an entity that has chosen bankruptcy protection.  Yet it is precisely this extraordinary

exposure that compels the occasional protective intervention of the court").

3.  T&G repeatedly mischaracterizes appellant's argument as claiming that a document

must be actually relied upon by a judge to become a public record.  Thus it criticizes appellant's

"myopic focus on whether the bankruptcy court has yet relied on the Examiner's Report in

determining the substantive rights of the parties."  T&G Brief, p. 13 (emphasis added).[3/]  But this

is not appellant's position.  Appellant's point is that the Report in this case is not a judicial

record because it is not and never was intended to be relied upon by the court in adjudicating any

substantive rights.

In this connection, the appellees wholly fail to recognize the significance of the unusual

nature of this examiner's duties and purpose – in comparison with others whose reports may well

be considered judicial documents and, indeed, made public.  This examiner's duties were

explicitly limited to "pre-petition fraud, dishonesty, incompetence, misconduct, mismanagement,

or irregularity in the management and business affairs of the Debtor."  (A. 94)(emphasis added).

The sole purpose of the investigation was to develop potential evidence and theories for the

future use of beneficiaries of the estate.  No question was raised as to current management, and

there was never any anticipation of any plan of reorganization.  Thus, there never was any

intention or expectation that the Report would be relied upon by the Court to make any decision

during the course of the proceeding.  Compare In re Gilman Services, Inc., 46 B.R. 322

(Bankr.D.Mass. 1985)(examiner appointed to investigate post-petition losses and inadequate

---

[3/] See also id. p. 12 ("Gitto contends that the common law right of access does not apply
here because the bankruptcy judge did not rely on the Examiner's Report in rendering a judicial
decision.") (emphasis added).

record-keeping); In re First American Health Care of Georgia, Inc., 208 B.R. 992 (Bankr.S.D.Ga. 1996)(examiner appointed, in part, to investigate the "fog of uncertainty surrounding the issue of the independence of current management"); In re UAL Corp., 307 B.R. 80 (Bankr.N.D.Ill. 2004)(examiner appointed to investigate whether debtor acted in good faith in its attempts to modify employees' retirement benefits).[4/]

    4. Appellee T&G argues that creditors' meetings and Rule 2004 examinations are presumptively open to the public. T&G Brief, pp. 15-16. Therefore, it contends, so should a report of an examiner's investigation, which is similar to those proceedings, or even contains the results of them. This contention is flawed. In re Astri Investment Mgmt. & Securities Corp., 88 B.R. 730, 740 (D.Md. 1988), held that a statutorily required creditors meeting, under 11 U.S.C. §341, held in a United States courthouse, presided over by a United States Trustee, and on a required verbatim record which itself must be "available for public access," Rule 2003(c), is a presumptively public court proceeding. This precedent hardly requires disclosure of the Examiner's Report here. As for any documents complied by an examiner during a Rule 2004 examination, these are clearly not presumptively public. See In re Ionosphere Clubs, Inc., 156

---

[4/] Appellee MediaNews Group repeatedly cites to the Enron, WorldCom, and Planet Hollywood bankruptcies – without citation. However, it is clear that the duties of the examiners in Enron and WorldCom covered both former and current management and that the report had the dual purpose of providing the court with a basis for certain decisions as well as informing creditors of the basis for potential claims. See copies of the bankruptcy court's orders appointing examiners in the Enron and WorldCom bankruptcy cases, along with excerpts of the interim reports of the respective examiners, attached hereto as Exhibit A. The WorldCom examiner was directed to investigate "current or former management." Order, p. 2. It is clear from the Enron examiner's First Interim Report, pp. 12-12, n. 34, that he was assigned numerous duties concerning the ongoing management of the business.

Appellant was unable to obtain the bankruptcy court's orders and/or examiner's report in the Planet Hollywood bankruptcy case.

B.R. at 432 (record of examiner's 2004 examination not public).  In any event, they were not in this case.  Here, the Examiner conducted examinations without any general notice to interested parties.  Thus, when appellant learned of certain examinations after the fact, and subpoenaed witness statements, the Examiner moved to quash the subpoena, insisting that all witness statements were protected by the work product doctrine.  See Memorandum in Support of Motion by Non-Parties Charles L. Glerum and Choate, Hall & Stewart to Quash Subpoenas and for the Entry of a Protective Order, filed in LaSalle Business Credit v. Gary Gitto, et al., No. 04-12227- DPW, and attached hereto as Exhibit B.  In any event, the Report here contains far more than the contents of such examinations.  It also contains references to many voluntary interviews – which likewise were not public[5] – as well as the preliminary conclusions of the Examiner, based upon the statements and documents he obtained.

    5.  The appellees fail to identify any significant interest which outweighs the powerful considerations weighing against disclosure outlined by appellant (and previously by the Examiner).   According to the T&G, the interests favoring disclosure are these:

> As in the context of Section 341(a) meetings, "openness will seemingly increase the likelihood that all potential creditors are made aware of the bankruptcy proceedings and are afforded the opportunity to present claims" In re Astri, 88 B.R. at 741.  The Examiner's investigation and his Report serve an important role in Debtor's bankruptcy case: the investigation saved the creditor's committee considerable expense in conducting an investigation, it paints a fuller picture of the reasons behind the Debtor's bankruptcy, it can provide the basis for claims against the Debtor and its former management, it can aid in the discovery of hidden assets, it can serve as the basis for adversary proceedings to

_____

[5] The Examiner also moved to quash a subpoena for records of such an interview.  See Memorandum in Support of Motion by Non-Parties Craig Jalbert, Charles L. Glerum and Choate, Hall & Stewart to Quash Subpoenas, Docket No. 155, filed in LaSalle Business Credit v. Gary Gitto, et al., No. 04-12227- DPW.

> recover fraudulently transferred assets, and otherwise be used to
> object to Debtor's discharge.  In addition, the Examiner's Report
> will provide important information to other creditors and potential
> creditors.  Finally, making the report public will satisfy the public
> that the bankruptcy system is achieving its purposes and operating
> properly.

T&G Brief, p. 19.

It should be immediately apparent that every one of these interests can be and are fulfilled <u>without</u> disclosing the Report to the public.  Appellant has not objected to the release of the Report to any of the beneficiaries for whom it was intended, so long as not disclosed to the general public.  And, as to the general public, the appellee does not explain how the contents of the Report itself "will satisfy the public that the bankruptcy system is achieving its purposes and operating properly," any more than the fact of the completion of the Report, the nature of which is described in the opinion of the Bankruptcy Court.[6]

---

[6] MediaNews similarly argues the general benefit to the public of openness without identifying any way in which this interest is not satisfied by what is already on public record.

-6-

**CONCLUSION**

For the reasons set forth above and in appellant's main brief, the appellant requests that the Court reverse the Bankruptcy Court's decision to release the Examiner's Report to the public.

Respectfully submitted,

/s/ Max D. Stern
Max D. Stern
BBO No. 479560
Lillian Hirales
BBO No. 652698
Stern, Shapiro, Weissberg
 & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114

Dated: March 14, 2005

G:\SSWG\Gitto\Gitto-Global Bankruptcy\Impoundment Appeal\Reply brief.wpd